IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br><br>v.<br><br>JOSE LUIS VAELLO-MADERO,<br>Defendant | Case No. 17-2133 (GAG) |

### JOSE LUIS VAELLO-MADERO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO WITHDRAW THE STIPULATION FOR CONSENT JUDGMENT

Jose Luis Vaello-Madero, by his undersigned attorneys, respectfully submits this memorandum of law in support of his Motion to Withdraw the Stipulation for Consent Judgment. The Stipulation for Consent Judgment, filed on August 31, 2017 (the "Stipulation"), purports, among other things, to hold Mr. Vaello-Madero responsible for "unlawfully" collecting $28,080.00 in Social Security Title XVI Supplemental Security Income ("SSI") disability benefits. Because Mr. Vaello-Madero does not, and never intended to, consent to a judgment on the terms and conditions contained in the Stipulation, and because entering such judgment would be unfair and unreasonable, this Court should enter an order (i) rejecting the Stipulation, and (ii) withdrawing the Stipulation from the record.

### BACKGROUND OF THE CASE

Between 1985 and 2013, Mr. Vaello-Madero was a resident of New York. While residing there and experiencing severe health problems, he applied for SSI disability benefits with the assistance of a non-profit organization. He received his SSI disability payments through direct deposit into a New York bank account opened with the assistance of the same non-profit organization that had helped him with his SSI application. On July 6, 2013, Mr. Vaello-Madero

moved to Loiza, Puerto Rico to help care for his wife, who had previously moved there due to her own health issues. Answer ¶¶ 6-9.

In June 2016, approximately one month before his 62nd birthday, Mr. Vaello-Madero applied to receive Title II social security benefits. He went to the Social Security Administration ("SSA") office in Carolina, Puerto Rico, where an SSA employee assisted him in his application. The employee noted that Mr. Vaello-Madero was already in SSA's beneficiary database and asked him if he was a resident of New York. After confirming he no longer lived in New York, Mr. Vaello-Madero was told that in order to be able to receive his Title II social security benefits he could no longer receive SSI disability payments. He was asked to sign a few forms so as to finalize his application. He was not aware that moving to Puerto Rico would affect his ability to receive SSI disability benefits. He continued to receive those payments through direct deposit into his New York bank account until August 2016. *Id*. at ¶¶ 9-13.

A year later, the United States filed a civil action against Mr. Vaello-Madero ostensibly under 42 U.S.C. § 408(a)(4) for knowingly concealing or failing to disclose any event affecting his right to receive SSI disability payments and doing so with fraudulent intent—a felony that is subject to fines and up to five years in prison. Compl. ¶ 1. The two-page Complaint does not allege any knowledge of unlawful conduct or fraudulent intent on the part of Mr. Vaello-Madero. It merely alleges that he "failed to notify" the SSA of his move to Puerto Rico. *Id*. at ¶ 4.

On August 30, 2017, Mr. Vaello-Madero signed the Stipulation purportedly accepting responsibility for "unlawfully" collecting $28,080.00 in SSI disability benefits. He did not understand the terms and conditions of the Stipulation or the legal significance of accepting responsibility for "unlawfully" collecting SSI disability benefits. He was not aware of his right to trial on that issue or the burden of proof required of the Government. He was not represented

by counsel when he signed the Stipulation. Vaello-Madero Decl. ¶¶ 3-4. Mr. Vaello-Madero's native language is Spanish. He has only a limited understanding of English and does not speak English fluently. *Id.* at ¶ 1.

The Government filed the Stipulation on August 31, 2017, without any motion papers to support the entry of a consent judgment on its terms and conditions. ECF No. 3. About a month later, noting that Mr. Vaello-Madero was acting *pro se*, this Court issued an order informing him of his right to request *pro bono* counsel. ECF No. 4. Shortly thereafter, this Court appointed *pro bono* counsel to represent him in this action. ECF No. 7. With the advice of counsel, Mr. Vaello-Madero now understands the Stipulation's terms and conditions and is aware of its legal implications and consequences. He maintains that he did not intend to consent to the Stipulation's terms and conditions and, in any event, he no longer consents to the entry of judgment as contemplated therein. Vaello-Madero Decl. ¶ 5.

This Court has not yet entered judgment on the Stipulation.

## **GROUNDS FOR WITHDRAWING THE STIPULATION**

The Stipulation is invalid because Mr. Vaello-Madero does not, and never intended to, consent to a judgment that purports, among other things, to hold him liable for "unlawfully" collecting SSI disability benefits. To enter such judgment would be unfair and unreasonable.

A court cannot enter a consent judgment without a party's consent. *Rodi v. Ventetuolo*, 941 F.2d 22, 27 (1st Cir. 1991) (citing *United States v. Ward Baking Co.*, 376 U.S. 327, 334 (1964)); *see Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, No. 06-cv-139, 2008 WL 351651, at *7 (W.D. Mich. Feb. 6, 2008) (citing 46 Am. Jur. 2d Judgments § 211 (1994)). The "voluntary nature of a consent decree is its most fundamental characteristic." *Rodi*, 941 F.2d at 27 (quoting *Local No. 93, Int'l Assn. of Firefighters v. Cleveland*, 478 U.S. 501, 521-

22 (1986)). Consent is involuntary and thus "vitiated" when it is induced by error, intimidation or omissions of material information. *Ortiz-Alvarado v. Great Am.*, 182 D.P.R. 48, 62, 64-66 (P.R. 2011) (citing 31 L.P.R.A. § 3404).[1]

Furthermore, notwithstanding the existence of a prior agreement or the execution of a stipulation for consent judgment, "a party has the right to revoke his consent at any time before the rendition of judgment." *Med Vision, Inc. v. Medigain, LLC*, No. 15-cv-77-L, 2017 WL 1190494, at *10, *18 (N.D. Tex. Mar. 31, 2017) (refusing to enter an agreed judgment); *In re Panem*, 352 B.R. 269 (Bankr. D. Colo. 2006) (rejecting a stipulation for consent judgment); *In re Bermingham*, 201 B.R. 808 (Bankr. W.D. Mo. 1996) (granting motion to withdraw a stipulation for consent judgment); 46 Am. Jur. 2d Judgments § 177 (2017) ("The court may not render judgment by consent where it is advised that one of the parties no longer consents to the judgment or where there is no certainty about the existence of consent.").

Thus, *before* entering a stipulated judgment, courts routinely inquire into a defendant's actual consent and understanding of the judgment's legal significance, as well as the fairness and legality of its terms and conditions. *See, e.g.*, *Bermingham*, 201 B.R. 808; *Panem*, 352 B.R. 269. *See also Brigido Urbino v. Porto Rico Ry. Light & Power Co.*, 68 F. Supp. 841, 841-42 (D.P.R. 1946) (noting the court's prior review of a stipulated judgment to ensure, "in the interest of justice," that it was "fair and equitable" and consistent with applicable federal law and public policy). In particular, where a consent judgment purports to impose liability for monies allegedly obtained through fraud, courts consider the following factors:

> (1) whether the Stipulations are fair and equitable considering the probability of success, for either side, in the litigation;
>
> (2) the complexity and expense of the litigation;

---

[1] An English translation of *Ortiz-Alvarado* is attached as Exhibit 2 to the Declaration of John Ferré-Crossley.

>   (3) whether the debtors/defendants understand the terms of the agreement;
>
>   (4) whether there is a reasonable basis for entry of the judgment on the terms agreed to by the parties;
>
>   (5) whether the debtors/defendants are aware of the right to a trial on the merits; and
>
>   (6) whether the debtors/defendants consent at the time judgment is rendered.

*Panem*, 352 B.R. at 280-81 (internal footnotes omitted).

The Stipulation here fails under all of these factors. Mr. Vaello-Madero, who does not speak English fluently and was acting *pro se* at the time he signed the Stipulation, did not understand its terms and conditions. Nor was he aware of his right to a trial or the Government's burden of proof on whether he "unlawfully" collected any SSI disability payments. *See Bermingham*, 201 B.R. at 812, 813 (rejecting stipulation for judgment because defendants, even though represented by counsel, did not understand its term and conditions, the meaning of fraud, their right to trial on that issue, or the burden of proof required of the plaintiff); *Panem*, 352 B.R. at 287-88 (similar); *cf. Ortiz-Alvarado,* 182 D.P.R. at 69-70 (nullifying agreement because one party was missing material information when executing it). And considering the Complaint's deficiencies, including the failure to allege any knowledge of unlawful conduct or any fraudulent intent, the Stipulation unfairly and unreasonably subjects Mr. Vaello-Madero to criminal penalties without any meaningful defense. *See Panem*, 352 B.R. at 281-82 (rejecting stipulation for judgment where the plaintiffs insufficiently pleaded fraud).

Moreover, when weighing the complexity and expense of the litigation, courts may consider the coercive effects on an individual defendant, especially one acting *pro se* like Mr. Vaello-Madero, of having to choose between facing "costly, complex, difficult and emotionally draining" litigation and settling a potentially non-meritorious case. *Panem*, 352

B.R. at 287; *cf. Ortiz-Alvarado,* 182 D.P.R. at 62 ("intimidation . . . vitiate[s] consent").  Most importantly, Mr. Vaello-Madero does not, and never intended to, consent to a judgment on the terms and conditions contained in the Stipulation and thus this Court should reject it. *Bermingham*, 201 B.R. at 812, 813; *Panem*, 352 B.R. at 288; *Med Vision*, 2017 WL 1190494, at *18; *Traverse Bay,* 2008 WL 351651, at *7; *cf. Ortiz-Alvarado,* 182 D.P.R. at 62 (noting that consent must be freely given).[2]

## CONCLUSION

For all these reasons, this Court should enter an order (i) rejecting the Stipulation, and (ii) withdrawing the Stipulation from the record.

Date:  February 1, 2018                               Respectfully submitted,

*/s/ John W. Ferré-Crossley*
John W. Ferré-Crossley
USDC-PR No. 227703
johnferre@gmail.com

Hermann Ferré (admitted *pro hac vice*)
hferre@curtis.com
Juan Perla (admitted *pro hac vice*)
jperla@curtis.com
Robert Groot (admitted *pro hac vice*)
rgroot@curtis.com

CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Tel:  (212) 696-6000

*Counsel for Defendant
Jose-Luis Vaello Madero*

---

[2] It should be noted that, upon granting the motion to withdraw from the consent judgment, the *Bermingham* court also granted leave to file an out-of-time answer; the court finding that defendant's delay was justified because she was negotiating the stipulated judgment.  201 B.R. at 813 n. 1.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of such filing to all CM/ECF Participants.

In San Juan, Puerto Rico, this 1st day of February, 2018.

*/s/ John W. Ferré-Crossley*
John W. Ferré-Crossley
USDC-PR No. 227703
johnferre@gmail.com

- 7 -