# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:17-cv-02133-GAG** |
| | ) | |
| | ) | |
| **JOSE LUIS VAELLO-MADERO,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## BRIEF IN SUPPORT OF THE UNITED STATES OF AMERICA'S COMBINED CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION BRIEF TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

STATUTORY BACKGROUND .........................................................................................2

FACTUAL BACKGROUND................................................................................................2

PROCEDURAL BACKGROUND......................................................................................3

ARGUMENT ..........................................................................................................................5

    I.    Review of the Third Affirmative Defense Is Governed by Rational Basis Review, and Limiting Eligibility for SSI Benefits to Residents of the Fifty States and the District of Columbia Satisfies That Standard of Review ........................................................5

        A.    Rational Basis Review Applies to the Third Affirmative Defense Because Puerto Rico Is a Territory Subject to the Territory Clause ...........................5

        B.    Limiting Eligibility for SSI Benefits to Residents of the Fifty States and the District of Columbia Satisfies Rational Basis Review ....................................7

    II.    Defendant Cannot Overcome Binding Precedent That Heightened Scrutiny Does Not Apply Here..................................................................................................................13

        A.    Standard Rational Basis Review Applies Here.............................................14

        B.    Because Defendant Has Failed to Present a Valid Disparate Treatment Claim, Heightened Scrutiny Does Not Apply .........................................................14

        C.    Courts Have Rejected Arguments That They May Ignore *Califano* and *Harris* When Presented With Arguments That a Classification Affects a Discrete and Insular Minority .........................................................................................16

        D.    Neither the Incorporation Doctrine Nor the District Clause of the Constitution Is Relevant Here...........................................................................................17

    III.    Defendant Has Presented No Justification for This Court to Ignore Binding United States Supreme Court Precedent................................................................................19

CONCLUSION.....................................................................................................................21

## INTRODUCTION

When Congress exercises its discretion to establish eligibility requirements for receipt of government benefits, courts afford that decision a strong presumption of constitutionality. In accordance with this principle, the Supreme Court has expressly held that Congress may place restrictions on the eligibility of persons residing in United States territories to receive payments under the Supplemental Security Income program administered by the Social Security Administration, and that such restrictions are consistent with equal protection principles. Despite this clear, binding precedent, the defendant in this action has asserted as an affirmative defense that restrictions on the eligibility of persons residing in Puerto Rico, a United States territory, is inconsistent with equal protection principles. That affirmative defense fails as a matter of law.

Puerto Rico is a United States territory subject to the plenary authority of Congress under the Territory Clause. Binding Supreme Court precedent makes clear that Congress can pass economic and social welfare legislation for the territories so long as it has a rational basis for its actions. *See Harris v. Rosario*, 446 U.S. 651 (1980) (per curiam); *Califano v. Torres*, 435 U.S. 1 (1978) (per curiam). Here, the legislation at issue clearly satisfies rational basis review, as residents of Puerto Rico do not pay federal income tax, which funds the Supplemental Security Income program; moreover, the increased cost to the federal treasury of extending Supplemental Security Income benefits to residents of Puerto Rico would be very substantial, especially in light of the fact that Puerto Rico residents are exempted from paying federal income tax. The Equal Protection Clause does not obligate Congress to treat Puerto Rico as if it were a State. Additionally, Defendant has failed to demonstrate that heightened scrutiny is warranted here. Because the challenged statute withstands constitutional review, the Court should enter summary judgment in favor of the United States.

1

## STATUTORY BACKGROUND

The Social Security Administration ("SSA") provides benefits to aged persons and persons with disabilities primarily under two programs. Under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*., SSA pays benefits to insured workers and their families at retirement or death, or in the event of disability. Under the Supplemental Security Income ("SSI") program, established by Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., SSA provides benefits to aged and blind persons, and persons with disabilities, who meet certain income and resource requirements. No individual is eligible for SSI benefits during any month in which he or she "is outside the United States." *Id*. § 1382(f)(1). For purposes of the SSI program, "the term 'United States,' when used in a geographical sense," is defined as "the 50 States and the District of Columbia." *Id*. § 1382c(e).[1]

## FACTUAL BACKGROUND

Defendant Jose Luis Vaello Madero ("Defendant") was formerly a recipient of SSI disability benefits and currently receives SSA Title II benefits. Joint Case Mgmt. Mem., ECF No. 51, at 2. Defendant formerly resided in the State of New York. *Id*. During his residency in New York, Defendant became a recipient of SSI benefits. *Id*. In June 2012, SSA sent Defendant a sixteen-page Notice of Award describing the amounts of his SSI benefits, including back payments and future monthly payments, and explaining how the amounts were calculated. *Id*. at 3. This Notice of Award also provided additional information, including that Defendant was required to report if he moved to a different address. *Id*.

---

[1] Additionally, by passing a Joint Resolution in 1976, the U.S. Congress made SSI program benefits available to residents of the Northern Mariana Islands. *See* Pub. L. No. 94-241, § 502(a)(1), 90 Stat. 263, 268 (1976) (codified at 48 U.S.C. § 1801 note, and implemented by 20 C.F.R. § 416.120(c)(10)).

In or about July 2013, Defendant moved to Puerto Rico.  *Id.*  However, Defendant did not notify SSA of his relocation to Puerto Rico.  *Id.*  Defendant continued receiving SSI benefits while residing in Puerto Rico.  *Id.*  Specifically, during the period between August 1, 2013 to August 31, 2016, Defendant received $28,081 in SSI benefits.  *Id.* at 4.

On July 27, 2016, SSA sent written notice to Defendant advising him that the agency was lowering his monthly SSI benefits payment from $733.00 to $0 beginning September 2016.  *Id.* at 3.  The notice further stated that SSA was changing Defendant's past benefit amounts from the period of August 2014 through August 2016 to $0 because Defendant was residing outside the United States during that time period and was thus ineligible for SSI.  *Id.*  The notice advised Defendant of his right to appeal SSA's determination within 60 days.  *Id.*  SSA sent Defendant another notice dated August 15, 2016, advising him of a change in his SSI benefits during the period of August 1, 2013 through July 31, 2014 to $0.  *Id.*  The August 15, 2016 notice also advised Defendant of his right to appeal SSA's determination within 60 days.  *Id.*  Defendant did not file an appeal or hearing request with respect to either notice.  *Id.*

## PROCEDURAL BACKGROUND

On August 25, 2017, the United States filed a complaint against Defendant seeking collection of an overpayment of $28,081.00 in SSI benefits that he received after he moved to Puerto Rico.  Compl., ECF No. 1.  The asserted jurisdictional bases for the action were 28 U.S.C. § 1345 and 42 U.S.C. § 408(a)(4).  *Id.* ¶ 1.  Shortly thereafter, the parties entered into a consent judgment resolving the action.  Stipulation for Consent Judgment, ECF No. 3.  In October 2017, the Court, after noting that Defendant had appeared pro se, appointed pro bono counsel for Defendant.  Order (Oct. 5, 2017), ECF No. 4; Orders (Oct. 17, 2017), ECF Nos. 5-7.

3

On February 1, 2018, Defendant answered the complaint, and also moved to withdraw the stipulation for a consent judgment.  Answer, ECF No. 17; Mot. to Withdraw Stipulation, ECF No. 19.  The answer asserted three affirmative defenses: (1) that one of the alleged jurisdictional bases for the complaint, 42 U.S.C. § 408(a)(4), required specific intent to defraud, which the United States had failed to allege; (2) that an action under Section 408(a)(4), a criminal statute, could only be instituted after grand jury presentment and indictment; and (3) that the SSI program violated equal protection principles to the extent that it limited benefits with respect to Puerto Rico residents.  Answer, ¶¶ 14-16.

The United States moved for voluntary dismissal of the complaint on March 14, 2018, explaining that the complaint had erroneously relied on 42 U.S.C. § 408(a)(4).  Mot. for Voluntary Dismissal, ECF No. 23, at 3.  The motion also sought dismissal for lack of subject-matter jurisdiction over the affirmative defenses asserted in the answer, explaining that the Court lacked jurisdiction over the entire action.  *Id*. at 6-13.  The Court denied the United States' motion in a written opinion and order.  Op. and Order (May 14, 2018), ECF No. 36.

At the direction of the Court, the parties submitted a joint case management memorandum on June 15, 2018.  Joint Case Mgmt. Mem., ECF No. 51.  The parties agreed that no material factual disagreements existed, and that discovery was unnecessary, *id*. at 2, and entered into stipulations concerning relevant factual admissions and documents.  *Id*. at 2-4.  Defendant moved for summary judgment on August 10, 2018.  Def. Mot. for Summ. J., ECF No. 57 ("Def. MSJ").  In an order entered the same date, the Court directed the United States, in responding to Defendant's argument that his constitutional argument should receive heightened scrutiny, to "discuss 1) why such heightened standard is inapplicable, and 2) if it is applicable, whether such legislation nonetheless withstands such heightened scrutiny."  Order, Aug. 10, 2018, ECF No. 58.

4

## ARGUMENT

Because the United States has conceded that the Court lacks jurisdiction over its claim in this case, the sole remaining issue is Defendant's third affirmative defense, which asserts that the SSI program violates equal protection principles[2] to the extent that it limits benefits with respect to Puerto Rico residents.[3]  This defense has no merit because the challenged provisions serve legitimate governmental ends and because Defendant has failed to negate every reasonably conceivable set of facts that could provide for the different treatment accorded Puerto Rico.  The United States therefore respectfully requests that the Court enter judgment in its favor with respect to the third affirmative defense.

**I.      Review of the Third Affirmative Defense Is Governed by Rational Basis Review, and Limiting Eligibility for SSI Benefits to Residents of the Fifty States and the District of Columbia Satisfies That Standard of Review.**

**A.      Rational Basis Review Applies to the Third Affirmative Defense Because Puerto Rico Is a Territory Subject to the Territory Clause.**

The Constitution provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."  U.S. Const. Art. IV, § 3, cl. 2 (Territory Clause).  That plenary authority extends over "the people of the Territories and all the departments of the territorial governments," *First Nat'l*

---

[2] The Equal Protection Clause prevents a State from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Under *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954), by operation of the Fifth Amendment's Due Process Clause the same equal protection principles generally constrain the federal government, even though the Equal Protection Clause by its terms does not.

[3] The United States maintains that the Court lacks jurisdiction over this case because neither of the jurisdictional bases asserted in the complaint suffice, because the United States did not allege or rely on common-law theories of recovery in the complaint, and because Defendant failed to exhaust administrative remedies.  *See* ECF Nos. 23, 32.  However, in light of the Court's May 14, 2018 decision denying its motion for voluntary dismissal, the United States has elected not to restate its jurisdictional arguments in the present motion.

*Bank v. Cty. of Yankton*, 101 U.S. 129, 133 (1879), and allows Congress to legislate for the territories "in a manner . . . that would exceed its powers, or at least would be very unusual, in the context of national legislation enacted under other powers delegated to it." *Palmore v. United States*, 411 U.S. 389, 398 (1973).

Puerto Rico is a territory of the United States and, thus, subject to Congress's plenary authority under the Territory Clause. *See, e.g.*, *Harris*, 446 U.S. at 651-52; *Torres v. Puerto Rico*, 442 U.S. 465, 469-71 (1979); *Dávila-Pérez v. Lockheed Martin Corp.*, 202 F.3d 464, 468 (1st Cir. 2000). The First Circuit has made clear that, although Congress may show its intent in a particular statute to treat Puerto Rico as either a state or territory, there is no question that "Puerto Rico is 'constitutionally a territory,'" *United States v. Maldonado-Burgos*, 844 F.3d 339, 345 (1st Cir. 2016) (quoting *Franklin Cal. Tax-Free Trust v. Puerto Rico*, 805 F.3d 322, 344 (1st Cir. 2015)), *reh'g denied & en banc*, 869 F.3d 1 (1st Cir. 2017), and, therefore, Congress has "constitutional authority to legislate for Puerto Rico differently than for the states," *id.* (citing *Jusino Mercado v. Puerto Rico*, 214 F.3d 34, 40-44 (1st Cir. 2000)).

The Supreme Court has held that under the Territory Clause, Congress can legislate for Puerto Rico differently than for the States "so long as there is a rational basis for its actions." *Harris*, 446 U.S. at 651-52 (referencing Congress's Territory Clause power, and applying rational basis review to reject claim that "lower level of [Aid to Families with Dependent Children] reimbursement provided to Puerto Rico violates the Fifth Amendment's equal protection guarantee"). And the Supreme Court has also held that rational basis review applies to an equal protection challenge to the constitutionality of Congress's treatment of Puerto Rico under the SSI program. *See Califano*, 435 U.S. at 4-5 (explaining that because such a challenge represents "a constitutional attack upon a law providing for governmental payments of monetary benefits," it is

6

"entitled to a strong presumption of constitutionality" and must be upheld as long as it is "rational, and not invidious") (internal citations omitted).  Because Defendant's third affirmative defense presents just such a challenge, rational basis review applies to review of that defense.

Courts of appeals have also acknowledged that rational basis review is a necessary consequence of an exercise of Territory Clause authority.  *See, e.g.*, *Besinga v. United States*, 14 F.3d 1356, 1360 (9th Cir. 1994) (stating that "the broad powers of Congress under the Territory Clause are inconsistent with the application of heightened judicial scrutiny to economic legislation pertaining to the territories"); *Quiban v. Veterans Admin.*, 928 F.2d 1154, 1160 (D.C. Cir. 1991) (stating that "the Territory Clause permits exclusions or limitations directed at a territory and coinciding with race or national origin, so long as the restriction rests upon a rational base").  The application of rational basis review is supported in the present case by the Supreme Court's recognition that "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

### B.    Limiting Eligibility for SSI Benefits to Residents of the Fifty States and the District of Columbia Satisfies Rational Basis Review.

Rational basis review "is a paradigm of judicial restraint."  *Id.* at 314.  It is axiomatic that "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," *id.* at 313, and rational basis review does not "demand  . . . that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification," *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992).  Thus, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  *Beach Commc'ns*, 508 U.S. at 315.  To prevail, Defendant bears the burden of demonstrating "that

7

no plausible set of facts exists that could forge a rational relationship between the challenged rules and the government's legitimate goals." *Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 355 (1st Cir. 2004).

Binding precedent requires entry of judgment for the United States on Defendant's third affirmative defense.  In *Califano*, three individuals who became ineligible for SSI benefits when they moved to Puerto Rico filed suit in this district.  435 U.S. at 1, 2-3.  They alleged that limiting SSI benefit eligibility to, at that time, residents of the fifty U.S. States and the District of Columbia, and concomitantly denying those benefits to individuals who had received SSI benefits when living in one of the fifty States and who had moved to Puerto Rico, violated the constitutional right to travel.  *Id.* at 1-3.  Though a three-judge court initially determined that this eligibility limitation was unconstitutional, the Supreme Court reversed.  *Id.* at 3-4.

In rejecting the *Califano* plaintiffs' right to travel claim, the Court also explained why the plaintiffs could not rely on the equal protection component of the Due Process Clause.  In a footnote, the Supreme Court explained:

> [Plaintiffs'] complaint had also relied on the equal protection component of the Due Process Clause of the Fifth Amendment in attacking the exclusion of Puerto Rico from the SSI program.  Acceptance of that claim would have meant that all otherwise qualified persons in Puerto Rico are entitled to SSI benefits, not just those who received such benefits before moving to Puerto Rico.  But the District Court apparently acknowledged that Congress has the power to treat Puerto Rico differently, and that every federal program does not have to be extended to it.  Puerto Rico has a relationship to the United States that has no parallel in our history.

*Id.* at 3 n.4 (citations and internal punctuation omitted).  As the Court noted, as long as the provision of the Social Security Act at issue is rational, it should be deemed constitutional.  *Id.* at 4.  *See Trailer Marine Transp. Corp. v. Rivera Vazquez*, 977 F.2d 1, 7 (1st Cir. 1992) ("[U]nder governing Supreme Court precedent, Congress may, and sometimes has, enacted laws that make different provision for Puerto Rico than for the states, limited only by a rational basis

requirement.") (citing *Harris*, 446 U.S. 651). And as the Supreme Court explained in *Califano*, several rational bases do indeed support the SSI exclusion for residents of Puerto Rico:

> At least three reasons have been advanced to explain the exclusion of persons in Puerto Rico from the SSI program. First, because of the unique tax status of Puerto Rico, its residents do not contribute to the public treasury. Second, the cost of including Puerto Rico would be extremely great – an estimated $300 million per year. Third, inclusion in the SSI program might seriously disrupt the Puerto Rican economy.

435 U.S. at 4 n.7 (citation omitted).

Furthermore, two years after deciding *Califano*, the Supreme Court held that the Secretary of Health and Human Services had acted consistently with principles of equal protection by providing levels of financial assistance to families with dependent children in Puerto Rico that were lower than assistance provided to families with dependent children in the fifty U.S. States, reversing a contrary decision from this district. *Harris*, 446 U.S. at 651-52. In *Harris*, the Court reiterated its equal-protection holding from *Califano*:

> Congress, which is empowered under the Territory Clause of the Constitution, U.S. Const., Art. IV, § 3, cl. 2, to "make all needful Rules and Regulations respecting the Territory . . . belonging to the United States," may treat Puerto Rico differently from States so long as there is a rational basis for its actions. In [*Califano*], we concluded that a similar statutory classification was rationally grounded on three factors: Puerto Rican residents do not contribute to the federal treasury; the cost of treating Puerto Rico as a State under the statute would be high; and greater benefits could disrupt the Puerto Rican economy. These same considerations are forwarded here . . . , and we see no reason to depart from our conclusion in [*Califano*] that they suffice to form a rational basis for the challenged statutory classification.

*Id.* at 651-52 (footnote and internal citation omitted).

As explained in *Harris* and *Califano*, the unique tax status of Puerto Rico and the high cost of treating Puerto Rico as a State for purposes of determining the allocation of federal funds under SSI constitute rational bases for Congress's actions. *See Harris*, 446 U.S. at 652; *Califano*, 435 U.S. at 5 n.7. Those additional costs to the public fisc provide, at a minimum, a "reasonably

9

conceivable state of facts that could provide a rational basis" for the statutory provision at issue here. *Beach Commc'ns*, 508 U.S. at 313.

Though Defendant challenges the justifications presented in *Califano* for limiting SSI benefits to residents of the fifty States and the District of Columbia, Def. MSJ at 16-18, his arguments lack persuasive force.  First, the "unique tax status" of Puerto Rico justifies the limitation.  *Califano*, 435 U.S. at 5 n.7.  As was the case when *Califano* was decided, residents of Puerto Rico – unlike residents of the fifty States and the District of Columbia – generally do not pay federal income tax.  26 U.S.C. § 933.[4]  SSI benefits are paid from the general revenues that are funded by federal income taxes, and thus, Puerto Rico residents are exempted from paying the taxes that fund the SSI program.  Furthermore, as Defendant correctly notes, Puerto Rico residents pay federal taxes such as the federal payroll tax.  Def. MSJ at 16.  However, federal payroll taxes fund SSA Title II benefit programs, which Puerto Rico residents can and do receive.  In any event, Puerto Rico residents also paid federal payroll tax in 1978, when *Califano* was decided, but that fact did not prevent the Supreme Court from deciding that Puerto Rico's "unique tax status" justified its decision.  435 U.S. at 5 n.7.[5]  The relevant distinction was that then, as now, federal law exempts Puerto Rico residents from paying federal income tax, which funds the general

---

[4] The general exemption of Puerto Rico residents from payment of federal income tax is subject to certain minor exceptions; for example, residents who are employed by the federal government and residents with income sources outside of Puerto Rico.  *See id.* § 933(1).

[5] To fund Social Security and Medicare benefits, the Federal Insurance Contributions Act, 26 U.S.C. § 3101 *et seq.* ("FICA") taxes "wages" paid by an employer or received by an employee "with respect to employment."  *Id.* §§ 3101(a), (b) (employee tax), 3111(a), (b) (employer tax); *see United States v. Quality Stores, Inc.*, 572 U.S. 141, 146 (2014).  26 U.S.C. § 3121 sets forth definitions applicable to FICA.  FICA was enacted in 1935, *see Union Pac. R.R. Co. v. United States*, 865 F.3d 1045, 1049 (8th Cir. 2017), and Section 3121(e)(2) has been part of FICA since 1954.  *See* Internal Revenue Code of 1954, Pub. L. No. 83-591, 68A Stat. 3, 424, § 3121(e)(2) ("For purposes of [FICA] . . . [t]he term 'United States' when used in a geographical sense includes Puerto Rico and the Virgin Islands.").

revenues used to pay SSI benefits.[6]  As such, the unique tax status of Puerto Rico justifies limiting

SSI benefits to residents of the fifty States and the District of Columbia.

Nor does the fact that eligibility requirements for various federal benefits programs may

differ with respect to residents of different U.S. territories undermine the classification at issue

here.  Def. MSJ at 17.  Defendant's contrary argument ignores the *sui generis* nature of the

relationship between the United States and each territory, and flies in the face of Congress's long

history of managing its relationship with each territory independently.[7]  Defendant cites no

authority suggesting that Congress is constrained to extend federal benefits legislation to U.S.

territories uniformly.[8]

---

[6] Defendant also misses the mark in challenging the rationality of the statute on the basis that a person eligible for SSI might not be eligible for payment of federal income tax regardless of residence.  Def. MSJ at 16.  The rationale underlying the limitation here is that the community of Puerto Rico residents, taken as a whole, are exempt from payment of the very revenue source (federal income tax) that would support the SSI program if it were extended to cover that community of residents.  This represents precisely the sort of line-drawing in conjunction with resource allocation of economic and social welfare legislation that receives significant deference under rational basis review, as explained further below.

[7] For example, Congress has enacted legislation ensuring that Puerto Rico is treated like a state for most statutory purposes, *see* 48 U.S.C. § 734, but has not passed analogous legislation for other territories.  And Congress has extended birthright citizenship to individuals born in some territories, *see* 8 U.S.C. §§ 1402, 1406, 1407 (Puerto Rico, Virgin Islands, and Guam), but not to individuals born in "outlying possessions" (including American Samoa).  *See id.* § 1408 (individuals born in outlying possessions are "nationals . . . of the United States"); *see generally Tuana v. United States*, 788 F.3d 300 (D.C. Cir. 2015) (holding that the Constitution does not require that American Samoans be granted citizenship).  Additionally, Congress has made SSI program benefits available to residents of the Northern Mariana Islands, *see supra* n.1, but has not extended such benefits to residents of other territories such as Puerto Rico, Guam, and the Virgin Islands.

[8] Nor do recent developments concerning Puerto Rico, including the recent hurricane, undermine the rationality of the challenged statute.  *See Cook v. Gates*, 528 F.3d 42, 55 (1st Cir. 2008) (stating that "the focus" of rational basis review is "entirely on the rationality of the [government's] reason for enacting the law" and not "the strength of the individual's interest or the extent of the intrusion on that interest caused by the law").

Second, "the cost of including Puerto Rico" in the programs at issue "would be extremely great." *Califano*, 435 U.S. at 5 n.7. A recent Government Accountability Office ("GAO") report estimated that if Puerto Rico residents were eligible for SSI benefits, annual federal spending would increase from the approximately $24 million spent on a similar program in Puerto Rico for low-income individuals, to a range from $1.5 to $1.8 billion. GAO, *Puerto Rico: Information on How Statehood Would Potentially Affect Selected Federal Programs and Revenue Sources*, at 82 (Mar. 4, 2014), https://www.gao.gov/assets/670/661334.pdf. As the Supreme Court has explained, because "protecting the fiscal integrity of Government programs, and of the Government as a whole, is a legitimate concern of the State," judicial "review of distinctions that Congress draws in order to make allocations from a finite pool of resources must be deferential, for the discretion about how best to spend money to improve the general welfare is lodged in Congress rather than the courts." *Lyng v. United Auto Workers of Am.,* 485 U.S. 360, 373 (1998). And in light of *Califano*'s express holding that conserving the public fisc was a rational justification for limiting eligibility of SSI benefits to residents of the fifty States and the District of Columbia, Defendant misplaces his reliance on an out-of-circuit district court case, *Windsor v. United States*, 833 F. Supp. 2d 394 (S.D.N.Y. 2012) (subsequent history omitted), that he cites to support a contrary principle. In any event, *Windsor* at most supports only the proposition that Congress may not exclude an "arbitrarily chosen group of individuals from a government program." *Id*. at 406 (citation omitted). But the Supreme Court's decision in *Califano* makes clear that limiting eligibility to SSI benefits to persons residing in the fifty States and the District of Columbia was based in rationality rather than arbitrariness or invidious discrimination.[9]

_____

[9] Defendant also fails to demonstrate that it was wholly irrational for Congress to conclude that an additional influx of federal SSI payments might disrupt Puerto Rico's economy. *Califano*, 435 U.S. at 5 n.7.

In addition to these rational bases, the Supreme Court has recognized that statutory provisions that require the legislature to engage in the process of "line-drawing" are "unavoidable components of most economic or social legislation." *Beach Commc'ns*, 508 U.S. at 315-16. The legislature's judgment in deciding the most appropriate manner in which to allocate resources such as SSI benefits requires Congress to "draw the line somewhere." *Id*. at 316. "This necessity renders the precise coordinates of the resulting legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally." *Id*. Whether to increase economic benefits to the territories under these programs and whether to do so incrementally and on a case-by-case basis is the sort of line drawing that constitutes a "virtually unreviewable" exercise of legislative prerogative. *See id*.

As explained by binding precedent, limiting SSI eligibility to residents of the fifty States and the District of Columbia withstands constitutional scrutiny. The Court should therefore enter judgment for the United States with respect to Defendant's third affirmative defense.[10]

## II.    Defendant Cannot Overcome Binding Precedent That Heightened Scrutiny Does Not Apply Here.

As explained above, the Supreme Court in *Califano* unmistakably held that rational basis review applies to an equal protection challenge to the treatment of Puerto Rico residents under the SSI program. Defendant does not seriously dispute the controlling nature of this precedent, but instead urges the Court to ignore this binding precedent and instead apply heightened scrutiny. However, as explained below, *see infra* part III, the Court may not ignore binding Supreme Court precedent. Additionally, neither of the two arguments advanced by Defendant for heightened

---

[10] For the reasons explained above, limiting eligibility to receive SSI benefits to residents of the fifty States and the District of Columbia would pass muster under any level of constitutional scrutiny.

13

review – namely, (1) that he has presented a disparate treatment claim justifying the application of heightened scrutiny, and (2) that the Court may ignore Supreme Court precedent based on the assertion that the classification here affects a discrete and insular minority – has merit.

### A.    Standard Rational Basis Review Applies Here.

As an initial matter, Defendant incorrectly contends that even if rational basis review is applicable, cases such as *Romer v. Evans*, 517 U.S. 620 (1996), and *Massachusetts v. HHS*, 682 F.3d 1 (1st Cir. 2012), require the Court to apply a version of that review with "a more critical lens." Def. MSJ at 11. Rather than rational basis review "with bite," what Defendant is essentially asking for is a ruling that this case presents the same context as *Romer*, *i.e.*, a situation in which the defense of a federal law is based solely on the singling out of a group that is "irrationally hated or irrationally feared." *See Cook*, 528 F.3d at 61 (quoting *Milner v. Apfel*, 148 F.3d 812, 817 (7th Cir. 1998)).

That is manifestly not the situation presented in this case. The government's justification here is not based on such factors, but is based instead on Congress's decisions, under the Territory Clause, about the unique circumstances of Puerto Rico and, *inter alia*, the cost of providing the benefits at issue in this case. Defendant may disagree with the legal means chosen by Congress to reach its policy goal, but such a disagreement about means does not implicate the *level* of review that a court must utilize to review economic and social welfare legislation. In any event, Defendant's reliance on cases such as *Romer* and *Massachusetts* is misplaced because neither case turned on the application of the Territory Clause, under which, as explained above, Congress is vested with especially broad discretion.

### B.    Because Defendant Has Failed to Present a Valid Disparate Treatment Claim, Heightened Scrutiny Does Not Apply.

Defendant incorrectly contends that heightened scrutiny should apply because he has

14

presented a valid disparate treatment claim. Def. MSJ at 9-10, 12-15. In order to sustain an equal-protection claim of disparate treatment on the basis of race or ethnic origin, a claimant must show than an "invidious discriminatory purpose was a motivating factor" for Congress's decision to restrict SSI benefits for Puerto Rico residents. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause," and accordingly, "official action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Id*. at 265, 264-65. Instead, Defendant must be able to show that racial discrimination was a "substantial" or "motivating" factor behind the government action, so that it would not have been taken "but for" the discriminatory motive. *Hunter v. Underwood*, 471 U.S. 222, 228, 231-32 (1985); *Arlington Heights*, 429 U.S. at 266. It is not sufficient for Defendant to show that Congress may have been aware that restricting Puerto Rico residents from eligibility to obtain SSI benefits could have had a discriminatory impact. *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Instead, Defendant must demonstrate that Congress made its decision because of, not in spite of, its discriminatory impact. *McCleskey*, 481 U.S. at 298; *Feeney*, 442 U.S. at 279.

"The burden is an onerous one," *Hayden v. Grayson*, 134 F.3d 449, 453 (1st Cir. 1998), and Defendant has failed to satisfy it here. Instead, Defendant presents assertions regarding a racially-discriminatory purpose motivating certain Supreme Court decisions involving Puerto Rico. Def. MSJ at 13-15. But Congress, not the Supreme Court, is the sole relevant decisionmaker. Defendant has presented no evidence at all of a discriminatory purpose allegedly motivating the Congress that enacted the provisions of 42 U.S.C. § 1382 limiting eligibility for SSI benefits to persons residing in the fifty States and the District of Columbia. The 2015 SSA

15

audit report cited by Defendant, Def. MSJ at 15, does not provide any such evidence of discriminatory purpose motivating that Congress; instead, that report accurately notes that under current law, Puerto Rico residents are not eligible for SSI benefits.

Consequently, having failed to satisfy his burden of proving that a racially-discriminatory purpose motivated the Congress that enacted the relevant provisions of 42 U.S.C. § 1382 – much less having marshalled any evidence to that effect – Defendant has not presented a valid claim of disparate treatment under equal protection principles. Heightened scrutiny therefore does not apply here.

> **C.    Courts Have Rejected Assertions That They May Ignore *Califano* and *Harris* When Presented With Arguments That a Classification Affects a Discrete and Insular Minority.**

Defendant's second argument that rational basis review should not apply here is that the classification at issue should be deemed to affect a discrete and insular minority. Def. MSJ at 10-11, 12. Initially, this argument – that a facially-neutral law disparately affects a particular group of persons – merely reformulates Plaintiff's disparate-impact argument under a different name, and as explained above, even if Plaintiff had demonstrated disparate impact here, it would not trigger heightened scrutiny. In any event, the D.C. Circuit in *Quiban* squarely rejected this argument, and its rationale is supported by Supreme Court and First Circuit precedent. Addressing an amicus argument that because Philippine veterans constituted a "discrete and insular minorit[y]," the court should apply strict scrutiny to a classification rendering such veterans ineligible for certain benefits, the D.C. Circuit held: "To require the government, on that account, to meet the most exacting standard of review – a standard that has been called strict in theory and fatal in fact would be inconsistent with Congress's large powers to make all needful Rules and Regulations respecting the Territory belonging to the United States." *Quiban*, 928 F.2d at 1160

16

(citations and internal punctuation omitted).  Applying *Harris* and *Califano*, *id*. at 1159-60, the

D.C. Circuit found that "strict scrutiny [was] unwarranted" and instead applied "the relatively

undemanding rational basis standard."  *Id*. at 1159-60, 1161; *see also Besinga*, 14 F.3d at 1360

(agreeing that *Harris* and *Califano* "are controlling on the question of the appropriate standard of

review," and applying rational basis review).   Notably, the D.C. Circuit's conclusion relied on

Congress's broad authority under the Territory Clause, and Supreme Court and First Circuit

precedent confirm that pursuant to that Clause, "Congress has broad latitude to develop innovative

approaches to territorial governance" and within that broad latitude, it can legislate over the

territories differently than for the States.  *See Palmore*, 411 U.S. at 398; *accord United States v.*

*Rivera Torres*, 826 F.2d 151, 154 (1st Cir. 1987).

    In sum, heightened scrutiny does not comport with the level of deference that Congress is

accorded in matters of social and economic policy.[11]  Supreme Court and First Circuit precedent

make clear that rational basis review is the applicable standard here, and cases from other Circuits

confirm this conclusion.

### D.    Neither the Incorporation Doctrine Nor the District Clause of the Constitution Is Relevant Here.

    Defendant mistakenly relies on arguments regarding the territorial incorporation doctrine,

Def. MSJ at 18-21, and on Congress's power to enact legislation for the District of Columbia under

the District Clause, U.S. Const. art. 1, § 8, cl. 17.  Def. MSJ at 21-23.  Neither body of case law

assists Defendant here.  Under "the doctrine of territorial incorporation," "the Constitution applies

---

[11] Defendant presents no serious argument that intermediate scrutiny should apply here.  Def. MSJ at 11.  The sole case relied on by Defendant to support this proposition, *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985), involved the application of rational basis review, not intermediate scrutiny.  Moreover, neither of the traditional bases mentioned by Defendant for justifying the application of intermediate review – namely, classifications on the basis of gender and "illegitimacy" – are at issue here.

17

in full in incorporated Territories surely destined for statehood but only in part in unincorporated Territories." *Boumediene v. Bush*, 553 U.S. 723, 757 (2008) (citations omitted). Defendant misplaces his reliance on that doctrine, which has no bearing on this case. Instead, that doctrine is only relevant to the extent there is an open question of whether a constitutional right extends to Puerto Rico or not, *see Torres*, 442 U.S. at 469-71 (collecting cases), but binding precedent already makes it clear that equal protection principles apply to Puerto Rico. *Id*. at 469-70. Even if Puerto Rico were an incorporated territory, it would be subject to the Territory Clause and Defendant would still be challenging economic and social welfare legislation. Moreover, all of the case law cited by Defendant under this rubric, Def. MSJ at 18-21, predates both *Califano* and *Harris*, and cannot overcome that binding precedent. Therefore, regardless of Puerto Rico's status, rational basis review applies and the limitation of eligibility for SSI benefits to residents of the fifty States and the District of Columbia passes muster.

Similarly, Defendant's arguments based on Congress's power to enact legislation for the District of Columbia pursuant to the District Clause, Def. MSJ at 21-23, miss the mark because that Clause is irrelevant here. The essence of Defendant's argument is the same as his argument with respect to the territorial incorporation doctrine: namely, that equal protection principles apply when Congress enacts legislation pertaining to the District of Columbia. But as explained above, that is not a question at issue here. Furthermore, Defendant errs in relying on *United States v. Thompson*, 452 F.2d 1333 (D.C. Cir. 1971), for the principle that legislation affecting District of Columbia residents differently is "highly suspect," Def. MSJ at 22, or subject to heightened scrutiny. The D.C. Circuit has abrogated *Thompson*, explaining that "[w]hatever force *Thompson*'s reasoning about the status of D.C. residents once carried, it has not survived" *United States v. Cohen*, 733 F.2d 128 (D.C. Cir. 1984), an *en banc* decision. *Calloway v. Dist. of*

*Columbia*, 216 F.3d 1, 7 (D.C. Cir. 2000). In these two later decisions, *Cohen* and *Calloway*, the D.C. Circuit explained that District of Columbia residents "do not comprise a suspect class for equal protection purposes," *Calloway*, 216 F.3d at 7, and thus applied rational basis review to equal protection claims challenging legislation purporting to treat District of Columbia residents differently from non-District residents. *Id.* at 8; *Cohen*, 733 F.2d at 132-36. Thus, even if cases involving legislation enacted under the District Clause were relevant here – which they are not – they would only further demonstrate that rational basis review is the correct standard of review for Defendant's third affirmative defense.

## III. Defendant Has Presented No Justification for This Court to Ignore Binding United States Supreme Court Precedent.

Though Defendant acknowledges the existence of *Califano* and *Harris*, he incorrectly contends that this Court "is not bound to follow outdated Supreme Court precedent." Def. MSJ at 23. To the contrary, as the First Circuit has pointedly noted, the Supreme Court "has admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the [Supreme] Court 'the prerogative of overruling its own decisions.'" *Figueroa v. Rivera*, 147 F.3d 77, 81 n.3 (1st Cir. 1998) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)). Thus, even if this Court were to conclude (incorrectly) that intervening events had demonstrated the assumptions underlying *Califano* and *Harris* to be incorrect, the appropriate course of action would nevertheless be to follow those Supreme Court decisions, because they are "directly applicable precedent" here. Defendant claims that intervening events prove the underlying Congressional assumptions to be incorrect, but "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315.

19

Furthermore, Defendant cites no case in which a district court has simply ignored binding Supreme Court precedent.  Defendant misplaces his reliance on district court decisions involving same-sex marriage, Def. MSJ at 23-24, because the purported Supreme Court precedent at issue there was in fact a summary dismissal.  *See Baker v. Nelson*, 409 U.S. 810 (1972) (dismissing appeal of state supreme court case finding that restriction of marriage to opposite-sex couples was constitutional "for want of a substantial federal question"), *overruled by Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).  And the Supreme Court has made clear that unlike its directly applicable precedent, which is binding, a summary dismissal is not binding "when doctrinal developments indicate otherwise."  *Hicks v. Miranda*, 422 U.S. 332, 344 (1975).  By contrast, however, neither *Califano* nor *Harris* involved a summary dismissal; they both continue to have precedential effect. Therefore, same-sex marriage cases such as *Kitchen v. Herbert*, 961 F. Supp. 2d 1181 (D. Utah 2013), and *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921 (N.D. Cal. 2010), cited by Defendant, are simply inapposite on this issue.  And notably, Defendant cites no district court decision purporting to ignore a binding Supreme Court decision that did not involve a summary dismissal.

Contrary to Defendant's suggestion, then, "it is [the Supreme] Court's prerogative alone to overrule one of its precedents."  *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).  This is so even if it appears that "changes in judicial doctrine [have] significantly undermined" a prior holding.  *United States v. Hatter*, 532 U.S. 557, 567 (2001).  Absent such a principle, courts of appeals and district courts would be free to ignore Supreme Court precedent whenever they might believe it to have been undermined by more recent decisions.  Consequently, the First Circuit has made clear that "[a]s a circuit court, we are not empowered to determine that a Supreme Court decision has been overruled," *Igartúa v. United States*, 626 F.3d 592, 605 n.14 (1st Cir. 2010), and the same holds true for district courts.

20

In any event, Defendant has failed to demonstrate that subsequent Supreme Court decisions have significantly undermined *Califano* and *Harris*. Defendant misses the mark in relying on case law supporting the proposition that constitutional principles such as equal protection apply to United States territories. Def. MSJ at 25. Initially, some of these cases were decided *before*, rather than after, *Harris* and *Califano* (which were decided in 1978 and 1980, respectively). Furthermore, the Supreme Court has made clear that in the application of constitutional principles, "Congress, which is empowered under the Territory Clause of the Constitution, to 'make all needful Rules and Regulations respecting the Territory . . . belonging to the United States,' may treat Puerto Rico differently from States so long as there is a rational basis for its actions." *Harris*, 446 U.S. at 651-52 (internal citation omitted). Because the Territory Clause bestows broad power on Congress to legislate with respect to Territories, "Congress can, pursuant to the plenary powers conferred by the Territorial Clause, legislate as to Puerto Rico in a manner different from the rest of the United States." *Rivera Torres*, 826 F.2d at 154.[12]

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court enter summary judgment in its favor with respect to Defendant's third affirmative defense, and deny Defendant's motion for summary judgment.

Dated: October 10, 2018                                    Respectfully submitted,


                                                           JOSEPH H. HUNT
                                                           Assistant Attorney General

---

[12] Finally, Defendant misplaces his reliance on the Supreme Court's *Boumediene* decision, Def. MSJ at 25, because "the *Boumediene* court was concerned only with the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, and not with . . . any other constitutional text," including the Fifth Amendment. *Igartúa*, 626 F.3d at 600.

ERIC WOMACK
Assistant Branch Director

 /s/ Daniel Riess
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of October, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF System, which will automatically send notifications

of this filing to all attorneys of record.

 /s/ Daniel Riess
Daniel Riess

22