**No. 17CV02133-GAG**

---

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

---

# United States of America

*Plaintiff*

v.

# Vaello Madero

*Defendant*

---

**BRIEF OF *AMICUS CURIAE*
HON. JENNIFFER A. GONZALEZ COLON
RESIDENT COMMISSIONER, PUERTO RICO**

---

Veronica Ferraiuoli Hornedo
USDC-PR 213814
Office of the Resident Commissioner
1529 Longworth House Office Building
Washington, DC 20515
P.O. Box 9023958
San Juan, PR 00902-3958
202-225-2615   787.723-6333
Veronica.Ferraiuoli@mail.house.gov

Counsel for *Amicus Curiae*

---

### INTRODUCTION[1]

---

Supplemental Security Income (SSI) is a national program established in 1972 to substitute federal subsidies granted to the States to provide financial aid to needy individuals. Under the SSI program, the federal government provides direct economic assistance to low-income individuals older than 65 and individuals with disabilities. Unlike Social Security, which is financed by dedicated payroll taxes, SSI is funded from general revenues.

Since SSI began in 1974, it has changed from a program that mainly supplemented Social Security income for elderly adults to a broader anti-poverty program that aids the disabled of all ages, becoming increasingly important for children and adults with disabilities. SSI benefits are about three-fourths of the poverty level for a single person. Thus, while SSI alone is not enough to lift people out of poverty, it reduces the number of people in extreme poverty and greatly lessens the burden on family members. In 2013, SSI payments lowered from 63% to 42% the number of recipients living under the poverty level. The program currently pays a maximum benefit of $750 a month if one is single or $1,125 a month for a couple. The average beneficiary receives $553 per month and the average beneficiary under 18 receives approximately $662 a month.

SSI is available to American citizens who live in a States, the District of Columbia, and in the territory of the Northern Mariana Islands. The U.S. Virgin Islands, Guam, Puerto Rico and American Samoa are excluded from the program.

Instead of SSI, Puerto Rico, Guam, and the U.S. Virgin Islands receive supplemental assistance for through the AID TO THE AGED, BLIND, AND DISABLED PROGRAM (AABD) program, a capped grant from the U.S. Department of Health & Human Services which applied to the States prior to the establishment of SSI. Puerto Rico has to match 25% of the funds it receives from the AABD, a requirement that does not apply to SSI.

---

[1]   The statistical and economic data included in this brief was obtained and analyzed by William R. Morton, Analyst in Income Security with the CONGRESSIONAL RESEARCH SERVICE.

Puerto Rico receives $26 million dollars under AABD. This enables Puerto Rico to makes the average payment $77 per month to each beneficiary, to less than one-ninth the number of impoverished disabled or elderly citizens who would qualify for SSI.

According to the U.S. Government Accountability Office, if Puerto Rico had been a State in Fiscal Year 2011, the number of SSI beneficiaries in Puerto Rico would have been almost ten times as those who received AABD— from 37,500 to 354,000— and the average payment would have been $422 per month instead of $74 per month. Beneficiaries in Puerto Rico would have received up to $1.8 billion rather than the $26 million the territorial government received, having to match the Federal grant on a one-to-three basis and having to administer a "Commonwealth" program. The implementation of SSI in Puerto Rico would have represented 54 times as much money for individuals who have no ability to support themselves.

---

## SUPPLEMENTAL SECURITY INCOME

---

The Supplemental Security Income (SSI) program— Title XVI of the Social Security Act— is a means-tested federal entitlement program that provides monthly cash benefits to the needy aged, blind, and disabled.[2]

SSI was enacted in 1972 and took effect in 1974, it has grown to become the largest federal means-tested cash assistance program in the United States, with a caseload dominated by children and working-age adults with disabilities.[3]

The program is intended to provide a guaranteed minimum income for impoverished adults who cannot provide for basic living expenses due to age or disability. Benefits are about three-fourths of the

---

[2]   42 U.S.C. §§1381-1383f.

[3]   Daly, M. & Burkhauser, R.V. (2003), The Supplemental Security Income Program. In R.A. Moffitt (Ed.), *Means-Tested Transfer Programs in the United States* (p. 79). Chicago, IL: The University of Chicago Press.

Federal poverty level for an individual and slightly over 80 percent of poverty for a couple.[4] Even with SSI, in 2013, about 42% of all SSI recipients and 34% of SSI recipients under 18 still lived under the poverty level; while 66% of all recipients and 59% of those under 18 would have fallen under the poverty level if they had not received SSI.[5]



**Source**: Michelle Stegman Bailey and Jeffrey Hemmeter, "Characteristics of Noninstitutionalized DI and SSI Program Participants, 2013 Update" Social Security Administration Research and Statistics Note No. 2015-02 (released September 2015), Table 13, https://www.ssa.gov/policy/docs/rsnotes/rsn2015-02.html.

SSI is known as a program of *last resort* because claimants must first apply for all other benefits for which they might be eligible. The program does not have work requirements because of the age or disability of beneficiaries, and assists only those whose are impoverished. Although SSI is administered by the Social Security Administration (SSA), it is not part of Old-Age, Survivors, and Disability Insurance

---

[4]   Based on Department of Health and Human Services (HHS) poverty guidelines, which differ slightly from thresholds used by the Census Bureau to determine the number of people living in poverty. *See* http://aspe.hhs.gov/poverty/index.cfm   for   HHS   poverty   guidelines.   *See also* http://www.census.gov/hhes/www/poverty/data/threshld/index.html for Census Bureau poverty thresholds.

[5]   Anne DeCesaro and Jeffrey Hemmeter, "Characteristics of Noninstitutionalized DI and SSI Program Participants," Social Security Administration Research and Statistics Note No. 2008-02, Table 12, https://www.ssa.gov/policy/docs/rsnotes/rsn2015-02.html.

(OASDI), commonly known as Social Security. SSI operates in the States, the District of Columbia, and the unincorporated territory of the Commonwealth of the Northern Mariana Islands.

**Eligibility Requirements**

To be eligible for SSI, individuals must be aged, blind, or disabled as defined in federal law. *Aged* refers to individuals who are age 65 or older. Individuals are considered *blind* if they are of any age and have central visual acuity of 20/200 or less in the better eye with the use of a correcting lens or have a visual field limitation of 20 degrees or less in the better eye. Individuals are considered *disabled* if they meet the same definition of disability that applies under the Social Security Disability Insurance (SSDI) program.

- ➢ **Disabled Adults**. Individuals aged 18 or older must be unable to engage in any substantial gainful activity (SGA) by reason of any medically determinable physical or mental impairment that is expected to last for at least 12 months or to result in death. SSA uses a monetary threshold to determine whether a person's work activity constitutes SGA. In 2018, the threshold is $1,180 per month.[6] Adults generally qualify as disabled if their impairment is of such severity that they are unable to do any kind of substantial work that exists in the national economy, taking into account their age, education, and work experience.

- ➢ **Disabled Children**. Individuals under 18 must have a medically determinable physical or mental impairment that results in marked and severe functional limitations and is expected to last for at least 12 months or to result in death. Children typically qualify as disabled if they have a severe impairment that limits their ability to engage in age-appropriate childhood activities. In addition, the child's earnings must not exceed the SGA threshold at the time of application.

To be financially eligible, individuals must have income and resources within prescribed limits. *Income* is defined as anything one receives in cash or in kind that can be used to meet one's needs for food

---

[6] SSA, Office of the Chief Actuary (OCACT), "Substantial Gainful Activity," https://www.ssa.gov/oact/cola/sga.html.

and shelter. *Resources* are cash or other liquid assets or any real or personal property that an individual owns and could convert to cash to be used for his or her support and maintenance. In addition to the person's own income and resources, the income and resources of certain ineligible family members (such as a spouse or parent) may be deemed available to meet the needs of the person, and as such, may be included in his or her countable income and resources.

The limit for *countable income*—gross income minus all applicable exclusions—is equal to the federal benefit rate (FBR), which is the maximum monthly SSI benefit payable to qualified individuals and couples. In 2018, the FBR is $750 per month for an individual living independently and $1,125 per month for a couple living independently if both are SSI eligible.[7] The FBR is adjusted annually for inflation by the cost-of-living adjustment (COLA) applied to Social Security benefits. Countable income is subtracted from the applicable FBR in determining SSI eligibility and the amount of the payment. Certain income is disregarded for eligibility and payment purposes, including the first $20 per month of any income (earned or unearned) as well as the first $65 per month of earned income plus one-half of any earnings above $65.[8]

The limit for *countable resources*—gross resources minus all applicable exclusions—is $2,000 for an individual and $3,000 for a couple. As with income, certain resources are excluded in determining SSI eligibility, such as the person's primary residence, household goods and personal effects, one vehicle, and property essential to self-support.

In addition to meeting the categorical and financial requirements for SSI, a person must (1) reside in the United States and (2) be a U.S. citizen or a noncitizen who meets a qualified alien category as well as certain other conditions. For SSI purposes, the term "United States" includes the 50 states, the District of Columbia, and the territory of the Northern Mariana Islands. Individuals who are outside of those jurisdictions for 30 consecutive days or more are ineligible. For example, if a SSI recipient were to travel

---

[7]   SSA, OCACT, "SSI Federal Payment Amounts," https://www.ssa.gov/oact/cola/SSIamts.html.

[8]   *Unearned income* refers to income not derived from current work, such as Social Security, veterans' benefits, interest income, and cash from friends or relatives. *Earned income* includes wages, net earnings from self-employment, payments for services performed in a sheltered workshop, and certain royalties and honoraria. Certain types of in-kind (non-cash) support are also excluded, such as federal housing and food assistance.

from Florida to Puerto Rico and remain in the territory for 30 consecutive days or more, the individual would no longer be considered to be residing in the United States and would, therefore, be ineligible. If the individual returned to Florida, she would become eligible for SSI again after being physically present in the United States for 30 consecutive days, subject to certain conditions.

The Northern Mariana Islands is the only territory covered by the SSI program. The covenant by which the Northern Mariana Islands ceded itself to the United States (approved by P.L. 94-241) extended SSI to the Northern Mariana Islands, effective January 1978.[9]

**Participation**

In August 2018, SSA issued federally-administered payments to approximately 8.2 million SSI recipients, including 1.2 million children under 18 (or 14%), 4.7 million adults aged 18-64 (or 58%), and 2.3 million seniors aged 65 or older (or 28%).[10] The vast majority of SSI recipients — 86 percent — are eligible due to a severe disability (including blindness).



**SSI Recipients, September 2018**
(in thousands)

Source: SSA, ORES, "Monthly Statistical Snapshot, September 2018", Table 3, https://www.ssa.gov/policy/docs/quickfacts/stat_snapshot/#table3; SSA, ORES, "SSI Monthly Statistics, September 2018", Table , https://www.ssa.gov/policy/docs/statcomps/ssi_monthly/2018-09/table02.html.

---

[9]   Section 502(a) of P.L. 94-241 (48 U.S.C. §1801 note) states, "[t]he following laws of the United States in existence on the effective date of this Section and subsequent amendments to such laws will apply to the Northern Mariana Islands ... Title XVI of the Social Security Act as it applies to the several States."

[10]   SSA, Office of Research, Evaluation, and Statistics (ORES), "SSI Monthly Statistics, August 2018," September 2018, Table 2, https://www.ssa.gov/policy/docs/statcomps/ssi_monthly/index.html.

The average monthly SSI payment was $551 for all recipients, $656 for children, $576 for working-age adults, and $447 for seniors.[11]

**Funding and Expenditures**

Federal SSI benefits and administrative costs are financed from the general fund of the U.S. Treasury. Congress appropriates funds for mandatory benefit payments and discretionary administrative costs into SSA's accounts as part of the Departments of Labor, Health and Human Services, and Education, and Related Agencies (LHHS) appropriations acts. For FY2018, total outlays are projected to be $56.2 billion, with $50.8 billion for benefit payments and $5.4 billion for administrative costs.[12]

**SSI and Children with Disabilities**

"Disabled children living in low-income households are among the most disadvantaged of all Americans and are deserving of special assistance in order to help them become self-supporting members of our society."[13]



**Supplemental Security Income serves
1.2 Million Low-Income Children with Disabilities, including:**

65,406 children with congenital abnormalities like Down Syndrome

114,406 children with intellectual disabilities

185,648 children with autism

10,200 children with cancer

228,979 children with developmental disorders

91,442 children with disorders of the nervous system like cerebral palsy, or sensory disabilities like blindness

**Source:** SSA: SSI Annual Statistical Report 2017 (released March 2018), Table 20, https://www.ssa.gov/policy/docs/statcomps/ssi_asr/2017/sect04.html#table20.

---

[11]   *Id.*, Table 7. For more data on SSI recipients, see SSA's *SSI Annual Statistical Report, 2017* available at 9 https://www.ssa.gov/policy/docs/statcomps/ssi_asr/.

[12]   SSA, *Justification of Estimates for Appropriations Committees, Fiscal Year 2019,* February 2018, Table i.7, https://www.ssa.gov/budget/. Excludes federally-administered state supplementary payments and reimbursements from states.

[13]   Testimony of Robert Finch, Secretary of the Department of Health, Education and Welfare, "Social Security and Welfare Proposals" H.R. Rep. No. 231, 92nd Cong., 2d Sess., U.S.C.C.A. News 4989, 5133 (1972).

SSI is the only source of federal income support targeted to families caring for children with disabilities, and it reaches only the lowest-income families and most severely impaired children. As of December 2017, SSI served 1,182,593 low-income children with disabilities, which amounts to approximately 14% of SSI recipients. Disabilities include mental conditions such as autism, intellectual disability, schizophrenia, or bipolar disorder; physical conditions include cerebral palsy, muscular dystrophy, Downs Syndrome, blindness, and cancer.

Families caring for children with disabilities are more likely than other families with the same income to face material hardships, such as struggling to put food on the table, being forced out of their homes, having their electricity shut off, or going without needed medical care.[14] The modest income SSI provides doesn't solve all of these problems, but it does reduce the struggles of these vulnerable families. A stable source of income to pay for housing, for example, may prevent a child from having to leave his or her community and school, an upheaval that can be especially challenging for a child with special needs. Conversely, financial insecurity can pose additional challenges for children with disabilities. For example, children with special needs often require special diets, which increases food costs and makes them more vulnerable than other children to the harmful effects of food insecurity.[15]

SSI helps families make ends meet while paying for the highly individual supports their children require, many of which are not offered by schools or covered by insurance —like specialized therapies, medically prescribed diets, diapers for older children, home modifications for accessibility, adaptive equipment, tutors, specialized child care, and transportation to doctors and specialists.[16]

---

[14] Susan Parish et al., "Material Hardship in U.S. Families Raising Children with Disabilities," Exceptional Children, Vol. 75:1, 71-92 (2008) and "Material Hardship in U.S. Families Raising Children with Disabilities: Research Summary and Policy Implications," University of North Carolina, March 2009.

[15] National Commission on Hunger, Freedom from Hunger: An Achievable Goal for the United States of America, 2015, https://www.aei.org/wp-content/uploads/2016/01/Hunger_Commission_Final_Report.pdf.

[16] Consortium for Citizens with Disabilities, "Preserve Supplemental Security Income for Children with Disabilities: Speaker Ryan's Poverty Plan Proposes Harmful Elimination of Benefits," June 7, 2016, http://www.c-c-d.org/fichiers/Preserve-SSI-for-Children-and-Families-06-07-16.pdf.

Since SSI is available only to those who are disabled (or elderly) and have very low incomes and assets, more disabled children become eligible for SSI when poverty rates rise. According to the Center on Budget and Policy Priorities, SSI benefits particularly reduce deep poverty, lifting nearly 200,000 children with disabilities above 50 percent of the poverty level.[17]

## CASH ASSISTANCE FOR THE AGED, BLIND, AND DISABLED

Congress has not extended the SSI program to four of the five U.S. territories— Puerto Rico, the United States Virgin Islands, Guam, and American Samoa. Instead, Puerto Rico, the U.S. Virgin Islands and Guam continue to operate the grant programs for the aged, blind, and disabled, which SSI replaced in the States and the District of Columbia in 1974. The Social Security Act offers federal funds to Puerto Rico, Guam, and the Virgin Islands to help pay for cash assistance to needy aged, blind, or disabled adults under

> ➤ the separate programs of Old-Age Assistance (OAA; Title I), Aid to the Blind (AB; Title X), and Aid to the Permanently and Totally Disabled (APTD; Title XIV); or

> ➤ the single program of Aid to the Aged, Blind, or Disabled (AABD; Title XVI).[18]

The OAA, AB, APTD, and AABD grant programs— known collectively as the adult assistance programs— are a joint venture between the federal government and the territories, whereby the federal government reimburses the territories for a portion of approved expenditures made to or on behalf of eligible adult recipients. Unlike SSI, the adult assistance programs do not provide benefits to disabled children, although blind children may qualify for benefits if the territory permits. To qualify for federal funds (known as grants-in-aid), a territory must have an approved "state plan", which describes the nature and scope of

---

[17]   Romig, K., *SSI: A Lifeline for Children with Disabilities,* May 11, 2017.

[18]   42 U.S.C. §§301-306, 1201-1206, 1351-1355, and 1381 note-1385 note, respectively. See also §1101(a)(1) of the Social Security Act (42 U.S.C. §1301[a][1]) and 45 C.F.R. §§201.0 and 201.1(g).

its program(s).[19] Within certain federal requirements, the territories have broad discretion to determine the features of their assistance programs, such as eligibility requirements, need standards (i.e., income or resource limits), benefit levels, and program administration. The Department of Health and Human Services (HHS), Administration for Children and Families (ACF), Office of Family Assistance (OFA) oversees the assistance programs at the federal level.

The OAA and AB programs were established in 1935 through the original Social Security Act to furnish participating States with grants in an effort to improve assistance for the elderly and the blind.[20] The APTD program was established in 1950 to extend eligibility to needy adults who are permanently and totally disabled due to an impairment other than blindness. In 1962, States were given the option of consolidating their adult assistance programs for the aged, blind, and disabled into a single AABD program under Title XVI of the Social Security Act.

Section 303(a) of the Social Security Amendments of 1972 (P.L. 92-603) repealed Titles I, X, and XIV of the Social Security Act, and Section 301 of P.L. 92-603 amended Title XVI of the Social Security Act to establish the SSI program effective January 1, 1974. However, Section 303(b) of P.L. 92-603 provided that the repeals and amendments made to the Social Security Act do not apply to Puerto Rico, Guam, and the Virgin Islands. Consequently, SSI was not extended to the territories.

Because Congress established SSI by amending Title XVI of the Social Security Act for all jurisdictions except these territories, Title XVI authorizing AABD continues to operate alongside Title XVI authorizing SSI. In other words, the Social Security Act contains two Title XVIs: the one authorizing AABD is set forth in Sections 1601-1605 of the Social Security Act.[21]

---

[19]   45 C.F.R. §201.2.

[20]   For more information, see Herman F. Grundmann, "Adult Assistance Programs Under the Social Security Act," Social Security Bulletin, vol. 48, no. 10 (October 1985), https://www.ssa.gov/policy/docs/ssb/v48n10/.

[21]   42 U.S.C. §§1381 note-1385 note. Unless otherwise stated, Title XVI hereinafter refers to the title of the Social Security Act authorizing AABD.

| Table 1. Overview of Cash Assistance Programs for the Aged, Blind, and Disabled under the Social Security Act | | | | |
|---|---|---|---|---|
| **Program** | **Authorizing Legislation** | **Title of the Act** | **U.S.C. Citation** | **Availability** |
| Grants to States for Old- Age Assistance for the Aged (OAA) | Social Security Act of 1935 (P.L. 74-271) | Title I | 42 U.S.C. §§301-306 | Guam and Virgin Islands |
| Grants to States for Aid to the Blind (AB) | Social Security Act of 1935 (P.L. 74-271) | Title X | 42 U.S.C. §§1120-1206 | Guam and Virgin Islands |
| Grants to States for Aid to the Permanently and Totally Disabled (APTD) | Social Security Act Amendments of 1950 (P.L. 81-734) | Title XIV | 42 U.S.C. §§1351-1355 | Guam and Virgin Islands |
| Grants to States for Aid to the Aged, Blind, or Disabled (AABD) | Public Welfare Amendments of 1962 (P.L. 87-543) | Title XVI | 42 U.S.C. §§1381 note – 1385 note | Puerto Rico |
| Supplemental Security Income for the Aged, Blind, and Disabled (SSI) | Social Security Amendments of 1972 (P.L. 92-603) | Title XVI | 42 U.S.C. §§1381 – 1383f | 50 States, District of Columbia, and Northern Mariana Islands |

**Source**: Congressional Research Service (CRS), based on information in U.S. Congress, House Committee on Ways and Means, *Compilation of the Social Security Laws*, committee print, 113th Cong., 1st sess., H.Prt. 113-3 (Washington: GPO, 2013), vol. I, part 1, https://www.ssa.gov/OP_Home/ssact/ssact.htm.

**Funding and Expenditures**

Titles I, X, XIV, and XVI of the Social Security Act provide federal funds to the territories through a system of categorical grants, which are designed to reimburse the territories for a share of the costs of providing cash assistance to the aged, blind, and disabled. Under this system, federal funds are allocated in proportion to a territory's approved expenditures for the quarter, subject to certain restrictions. The rate at which a territory is reimbursed by the federal government for approved expenditures is known as the federal financial participation (FFP) rate.

With respect to benefit payments, the Social Security Act provides two formulas under which territories may be reimbursed. Under the original formula, the FFP rate is 50%, up to $37.50 per recipient

per month.[22] Under the alternative formula, the FFP rate is 75%, provided the territory has an approved state Medicaid plan and elects the option.[23] All three territories elect the FFP rate of 75% under the alternative formula. With respect to administrative costs, the Social Security Act sets the FFP rate at 50%.[24] So, the federal government finances 75% of benefit payments and 50% of all administrative costs, while the territories finance 25% of all benefit payments and 50% of all administrative costs.

Congress appropriates funds to ACF's Payments to States for Child Support Enforcement and Family Support Programs account through LHHS appropriations act to cover federal costs for OAA, AB, APTD, and AABD. ACF's Office of Grants Management awards funds to territorial assistance agencies based on quarterly estimates of expenditures. Federal funding for the adult assistance programs is mandatory and subject to dollar limits (i.e., capped). Section 1108(a) of the Social Security Act sets a ceiling on the cumulative amount of federal funding that each territory can receive for a fiscal year for the following programs:[25]

> ➢ adult assistance under Titles I, X, XIV, and XVI of the Social Security Act;
>
> ➢ Temporary Assistance for Needy Families (TANF) under Title IV-A of the Social Security Act;
>
> ➢ foster care, permanency assistance, and other activities authorized under Title IV-E of the Social Security Act (hereinafter Title IV-E activities);[26] and
>
> ➢ additional matching grants under Section 1108(b) of the Social Security Act (hereinafter Section 1108(b) matching grants).[27]

---

[22] §§3(a)(2), 1003(a)(2), 1403(a)(2), and 1603(a)(2) of the Social Security Act; 42 U.S.C. §§303(a)(2), 1203(a)(2), 1353(a)(2), and 1383 note.

[23] §1118 of the Social Security Act; 42 U.S.C. §1318.

[24] §§3(a)(3), 1003(a)(3), 1403(a)(3), and 1603(a)(3) of the Social Security Act; 42 U.S.C. §§303(a)(3), 1203(a)(3), 1353(a)(3), and 1383 note.

[25] 42 U.S.C. §1308(a). Certain payments under Title IV of the Social Security Act are excluded from the funding cap.

[26] In addition to support for foster care and permanency assistance (i.e., adoption assistance and kinship guardianship assistance), Title IV-E activities includes funds for services and supports to assist youth in making a successful transition to adulthood as well as incentive payments for increases in completed adoptions and legal guardianships.

[27] 42 U.S.C. §1308(b). Under §1108(b) of the Social Security Act, the territories may also receive additional matching grants if certain requirements are met. The additional matching grants would be

Section 1108(c)(4) of the Social Security Act specifies that the caps are $107,255,000 for Puerto Rico, $4,686,000 for Guam, and $3,554,000 for the Virgin Islands.[28] These caps are not indexed to inflation and have remained at their current levels since FY1997.

| **Table 2. Section 1108 Cap, Basic TANF Block Grant Amount, and Available Funding for Adult Assistance and Other Specified Programs, by Territory** (FY2017 and Thereafter) | | | |
|---|---|---|---|
| **Territory** | **Section 1108 Cap** | **Basic TANF Block Grant** | **Available Funding for Adult Assistance and Other Specified Programs** |
| Puerto Rico | $107,255,000 | $71,326,345 | $35,928,655 |
| Guam | $4,686,000 | $3,454,042 | $1,231,958 |
| Virgin Islands | $3,554,000 | $2,837,170 | $716,830 |

**Source**: CRS, based on information from: Section 1108(c)(4) of the Social Security Act (42 U.S.C.§1308[c][4]); U.S. Department of Health and Human Services (HHS), Administration for Children & Families (ACF), Office of Family Assistance (OFA), "TANF-ACF-PI-1997-11 (Funding Guidance to Territories for TANF and Other Programs Subject to the Funding Ceiling in Section 1108 of the Social Security Act, as Amended by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA)," November 21, 1997, http://www.acf.hhs.gov/ofa/resource/policy/pi-ofa/1997/pi9711.htm; and HHS, ACF, OFA, "TANF-ACF-PI-2017-01, AMENDED (Guidance on State Family Assistance Grant (SFAG) Amounts for Fiscal Years (FY) 2017 and 2018)," September 20, 2017, https://www.acf.hhs.gov/ofa/resource/tanf-acf-pi-2017-01.

**Notes**: The table assumes full funding of the basic TANF block grant. Therefore, the amount for each territory in the column labeled *Available Funding for Adult Assistance and Other Specified Programs* is equal to the difference between the amount of its Section 1108 cap and the full amount of its basic TANF block grant. The term *Other Specified Programs* refers to Title IV-E activities and Section 1108(b) matching grants. For FY1997 through FY2016, the amount of the basic TANF block grant was $71,562,501 for Puerto Rico, $3,465,478 for Guam, and $2,846,564 for the Virgin Islands. Section 102(c) of the Consolidated Appropriations Act, 2017 (P.L. 115-31) amended Section 413 of the Social Security Act (42 U.S.C. §613) to set aside 0.33% of the basic TANF block grant for research, technical assistance, and evaluation. Thus, the basic TANF block grant amounts shown in the table are 99.67% of the aforementioned amounts.

The funding for each territory's system of adult assistance for a fiscal year is determined, in part, by its TANF block grant. The territories each receive a basic TANF block grant (i.e., the State Family Assistance Grant) based on the federal share of their expenditures in TANF's predecessor programs during

---

available to help finance additional expenditures for TANF and Title IV-E activities. In order for Puerto Rico to receive §1108(b) matching grants, it must spend from its own funds at least 100% of its share of expenditures for FY1995 under TANF's predecessor programs.

[28]   42 U.S.C. § 1308(c)(4).

the early-to-middle 1990s.[29] The amount of the basic TANF grant is fixed in law and has not been increased since TANF went into effect.[30] The amount of federal funding available for adult assistance, Title IV-E activities, and Section 1108(b) matching grants is effectively equal to the amount of the Section 1108 cap minus the amount of the basic TANF grant. For Puerto Rico, the Section 1108 cap is $107,255,000 and the full amount of the basic TANF grant is $71,326,345, leaving $35,928,655 in combined federal funding available for adult assistance, Title IV-E activities, and Section 1108(b) matching grants.

**AABD in Puerto Rico**

Puerto Rico's AABD program is administered by the Department of the Family, Administration for Socioeconomic Development of the Family (Departamento de la Familia, Administracion de Desarrollo Socioeconomico de la Familia [ADSEF]). Puerto Rico operates all of its cash assistance programs, including AABD, under its TANF program.[31] Specifically, assistance for the aged, blind, and disabled is provided under categories A, B, and D of the TANF program, respectively (Table 3).

To be categorically eligible for AABD, an individual must be aged, blind, or disabled as defined under the Social Security Act and Puerto Rican law and regulations.[32] Aged refers to individuals who are 65 or older.[33] Individuals are considered blind if they are of any age and have central visual acuity of 20/200

---

[29]   For more information, see CRS Report RL32748, *The Temporary Assistance for Needy Families (TANF) Block Grant: A Primer on TANF Financing and Federal Requirements*.

[30]   The Consolidated Appropriations Act, 2017 (P.L. 115-31) reduced the basic TANF block grant by 0.33% starting in FY2017. *See* the *Notes* section of Table 2.

[31]   Departamento de la Familia, Administracion de Desarrollo Socioeconomico de la Familia (ADSEF), *Memorial Explicativo del Presupuesto Recomendado, 2016-2017*, June 30, 2016, pp. 215-217, http://www2.pr.gov/ogp/Bvirtual/memExpPres/PDF/Agencias/ADSEF-17.pdf (hereinafter "ADSEF 2016 Budget Document"). *See also Normas de Certificación para la Determinación de Elegibilidad a Solicitantes y Participantes del Programa de Ayuda Temporal para Familias Necesitadas (TANF) de la Administración de Desarrollo Socioeconómico de la Familia del Departamento de la Familia* dated December 29, 2008, (D.E. 7653), available at http://app.estado.gobierno.pr/ReglamentosOnLine/Reglamentos/7653.pdf (hereinafter "ADSEF Regulation no. 7653").

[32]   §1601 of the Social Security Act; 42 U.S.C. §1381 note. See also 45 C.F.R. §233.10(b)(2) and ADSEF Regulation no. 7653.

[33]   8 L.P.R.A. §13.

or less in the better eye with the use of a correcting lens or have a visual field limitation of 20 degrees or

less in the better eye.[34] Individuals are considered disabled if they 18 or older and have a physical or mental

impairment that will likely not improve and which prevents them from performing their previous job or any

other paid work.[35]

| Table 3. Puerto Rico's TANF Program | | | |
|---|---|---|---|
| **Category** | **Needy Population** | **Source of Funding** | **Federal Designation** |
| Category A – Assistance for the Aged | Individuals aged 65 or older | Federal and Territory | AABD |
| Category B – Assistance for the Blind | Individuals who are blind | Federal and Territory | AABD |
| Category C – Temporary Assistance for Families with Children | Families with children under the age of 18 | Federal | TANF |
| Category D – Assistance for the Disabled | Individuals who are aged 18 or older and are permanently and totally disabled | Federal and Territory | AABD |
| Category G – General Assistance | Adults who are temporary and totally disabled and children under the age of 18 who are permanently disabled | Territory | Territorial program |
| Category T – Assistance for Children with Guardians | Children under the age of 18 who meet the requirements of Category C, except they are living with a qualified relative | Territory | Territorial program |

Source: CRS, based on ADSEF Regulation no. 7653 and Departamento de la Familia, Administracion de Desarrollo Socioeconomico de la Familia (ADSEF), Memorial Explicativo del Presupuesto Recomendado, 2016-2017, June 30, 2016, pp. 215-217, http://www2.pr.gov/ogp/Bvirtual/memExpPres/PDF/Agencias/ADSEF-17.pdf.

In Puerto Rico, the countable income limit is equal to the maximum basic AABD benefit, which is

$64 per month.[36] ADSEF counts both earned income (e.g., wages and net earnings from self-employment)

---

[34]   8 L.P.R.A. §15.

[35]   8 L.P.R.A. §15a.

[36]   See U.S. Government Accountability Office (GAO), *Puerto Rico: Information on How Statehood Would Potentially Affect Selected Federal Programs and Revenue Sources*, GAO-14-31, March 31, 2014, p. 83, http://www.gao.gov/products/GAO-14-31 (hereinafter "GAO Puerto Rican Statehood 2014").

and unearned income (e.g., Social Security, veterans' benefits, lottery winnings). As with SSI, certain income is not counted for AABD purposes. For the aged or disabled, ADSEF disregards the first $20 per month of earned income plus one-half of the next $60 per month.[37] For the blind, ADSEF disregards the first $85 per month of earned income plus one-half of the remainder above $85. ADSEF also excludes certain types of in-kind support, such as housing and food assistance. In addition to the basic AABD benefit, the program provides a secondary benefit equal to 50% of actual shelter costs, up to a maximum of $100 per month.[38]

The countable resource limit is $2,000.[39] Resources include cash, bank accounts, bonds, stocks, life insurance, and farms or other property. ADSEF excludes certain resources such as a person's primary residence, household goods and personal effects, motor vehicles, and certain trusts.

In addition to the categorical and financial requirements for AABD, a person must (1) be a U.S. citizen or a noncitizen who meets a qualified alien category and certain other conditions, (2) reside in the area of the local assistance office to which the claimant applied, and (3) live outside of an institution, except for those approved by ADSEF.

**Participation**

During FY2016 (the latest year for which data were available), the average monthly number of AABD recipients was 36,046.[40] The average total AABD benefit during this period was $77 per month, which includes the basic AABD benefit and the secondary benefit for shelter costs.[41] Of this amount, approximately $58 was comprised of federal funds and about $19 of territorial funds. ADSEF issues benefit payments to eligible recipients.

---

[37]   §1602(a)(14)(B) and (C) of the Social Security Act; 42 U.S.C. §1382 note. See also 45 C.F.R. §233.20(a)(8) and ADSEF Regulation no. 7653.

[38]   ADSEF Regulation no. 7653.

[39]   45 C.F.R. §233.20(a)(3) and ADSEF Regulation no. 7653.

[40]   Unpublished data provided to CRS by ACF on September 14, 2018.

[41]   *Id*.

In April 2016, Puerto Rico's AABD program provided cash assistance to 36,957 individuals, including 16,314 seniors (or 44%), 193 statutorily blind individuals (or 1%), and 20,450 totally and permanently disabled individuals aged 18 or older (or 55%).[42].

**Funding and Expenditures**

According to ACF, actual federal expenditures on Puerto Rico's AABD program in FY2016 were $26.4 million, with $24.9 million for benefit payments and $1.5 million for administrative costs (Table 4).[43] Based on this data, Puerto Rico's expenditures on AABD are estimated to have been $9.8 million, with $8.3 million for benefit payments and $1.5 million for administrative costs. Combined expenditures for FY2016 are estimated to have been $36.2 million, with $33.2 million for benefit payments and $3.0 million for administrative costs.

| Table 4. Expenditures on Puerto Rico's AABD Program, by Type and Source, FY2016 | | | |
| --- | --- | --- | --- |
| **Type** | **Actual Federal Expenditures** | **Estimated Territorial Expenditures** | **Estimated Combined Expenditures** |
| Benefit Payments | $24,904,346 | $8,301,449 | $33,205,795 |
| Administrative Expenses | $1,489,199 | $1,489,199 | $2,978,398 |
| **Total** | **$26,393,545** | **$9,790,648** | **$36,184,193** |

**Source:** CRS, based on unpublished federal expenditure data provided to CRS by ACF on September 14, 2018.

**Notes:** Estimated expenditures based on federal financial participation (FFP) rates of 75% for benefit payments and 50% for administrative costs.

---

[42]   ADSEF 2016 Budget Document, p. 216. For more data on AABD recipients, *see* Hector R. Cordero-Guzman, Ph.D, The Characteristics of Participants in the TANF Program [Category-C and Aid to the Aged, Blind and Disabled (AABD)] in Puerto Rico in April 2016, available in http://apps.estadisticas.pr/iepr/LinkClick.aspx?fileticket=HnBrjTiN68c%3D&tabid=93&mid=501&forcedownload=true.

[43]   Unpublished data provided to CRS by ACF on September 14, 2018.

**COMPARISON OF SSI AND AABD IN PUERTO RICO**

Table 5 provides a comparison of the SSI program in the 50 states, the District of Columbia, and the Northern Mariana Islands with Puerto Rico's AABD program in FY2016.

| Table 5. Comparison of the SSI Program and Puerto Rico's AABD Program, FY2016 | | |
| --- | --- | --- |
| Category | Supplemental Security Income (SSI) | Aid to the Aged, Blind, or Disabled (AABD) |
| **Type of Program** | Federal cash assistance for blind or disabled individuals of any age and the aged (some states provide supplements) | Federal-territory cash assistance program for blind individuals of any age, disabled adults, and the aged |
| **Administration** | *Federal SSI Benefits*: Social Security Administration (SSA) | *State level*: Puerto Rico's Department of the Family, Administration for Socioeconomic Development of the Family |
| | *State supplements*: SSA or the state | *Federal level*: Department of Health and Human Services (HHS), Administration for Children and Families (ACF), Office of Family Assistance (OFA) |
| **Categorical Requirements** | | |
| Aged | 65 years or older | Same |
| Blind | Individuals of any age with central visual acuity of 20/200 or less in the better eye with the use of a correcting lens or have a visual field limitation of 20 degrees or less in the better eye | Same |
| Disabled | *Adults*: Individuals aged 18 or older must be unable to engage in any substantial gainful activity (SGA) by reason of any medically determinable physical or mental impairment that is expected to last for at least 12 months or to result in death | Individuals aged 18 or older must have a physical or mental impairment that will likely not improve and which prevents them from performing their previous job or any other paid work |
| | *Children*: Individuals under the age of 18 must have a medically determinable physical or mental impairment that results in marked and severe functional limitations and is expected to last for at least 12 months or to result in death | No benefits for children under the age of 18 |

**Financial Requirements**

| | | |
|---|---|---|
| Income Limit | Countable income (gross income minus all applicable exclusions) must be less than the maximum monthly benefit: $733 for an individual or $1,100 for a couple | Countable income must be less than the maximum basic monthly benefit: $64 |
| Income Disregards | The first $20 of any income and the first $65 of earned income and one-half of the remainder above $65 | *Aged or Disabled*: the first $20 of earned income plus one-half of the next $60 of earned income |
| | | *Blind*: the first $85 of earned income plus one-half of the remainder above $85 |
| Resource Limit | Countable resources must not exceed $2,000 for an individual or $3,000 for a couple | Countable resources must not exceed $2,000 |

| **Number of Beneficiaries** | 8.3 million | 36,046 |
|---|---|---|
| **Average Monthly Benefit Amount** | $553 (federal SSI benefit plus state supplementary payment for selected states) | $77 (basic monthly benefit plus secondary benefit for shelter costs) |

**Financing**

| | | |
|---|---|---|
| System | Direct payments to recipients | Categorical matching grants to territory |
| | SSI benefits and related administrative costs are 100% federally funded | *Benefit payments*: 75% federal, 25% territory |
| | State supplements and related administrative costs are 100% state funded | *Administrative costs*: 50% federal, 50% territory |
| Source of Federal Funds | General fund of the U.S. Treasury | General fund of the U.S. Treasury |
| | Federal funding for benefits is mandatory and open-ended | Federal funding for benefits is mandatory and capped |
| Total Federal Spending | $63.1 billion | $26.4 million |

**Source**: CRS, based on information from the following sources: unpublished data provided to CRS by ACF on September 14, 2018; Social Security Administration (SSA), *Justification of Estimates for Appropriations Committees, Fiscal Year 2018*, February 2017, Tables i7-i8, https://www.ssa.gov/budget/; SSA, "Understanding Supplemental Security Income SSI Home Page—2018 Edition," https://www.ssa.gov/ssi/text-understanding-ssi.htm; and ADSEF Regulation no. 7653.

**LEGISLATIVE HISTORY OF CASH ASSISTANCE FOR
THE AGED, BLIND, AND DISABLED IN PUERTO RICO**

Puerto Rico was excluded from all titles of the original Social Security Act of 1935 (P.L. 74-271),

including Old-Age Assistance (OAA; Title I) and Aid to the Blind (AB; Title X). Although the Economic

Security Act— the Franklin Roosevelt Administration's bill— would have included Puerto Rico in OAA,

Aid to Dependent Children,[44] and certain other public assistance programs, lawmakers chose not to apply

the Social Security Act to territories other than Alaska and Hawaii.[45] In justifying this change, the Chair of

the House Committee on Ways and Means, Robert L. Doughton, wrote in a letter,

> It is true that the original bill included Puerto Rico in some of the titles […] During
> the consideration of the bill in executive session the change was made so that the
> definition and treatment of Puerto Rico would be the same as under our revenue
> laws, inasmuch as the bill contains provisions providing for income and excise
> taxes. This was done because Puerto Rico has its own tax law and does not pay
> any taxes into the Treasury of the United States. The committee felt that this
> change should be made in view of the fact that many of the benefits provided in
> the bill were dependent in a great measure upon the tax features. It was felt that
> questions involved in this matter might be ironed out later.[46]

In 1939, Congress extended two non-cash assistance titles of the Social Security Act to Puerto Rico

as part of the Social Security Amendments of 1939 (P.L. 76-379).[47] Although some lawmakers supported

extending all titles of the Act to Puerto Rico, this sentiment was not widely expressed.[48] In 1944, the Senate

Committee on Finance held a hearing on extending all of the public assistance titles to Puerto Rico and the

---

[44]   Aid to Dependent Children (ADC) later became Aid to Families with Dependent Children (AFDC), which was replaced by the TANF block grant.

[45]   The Economic Security Act did not provide for Aid to the Blind (AB). See SSA, "Social Security History: 1935 Administration Economic Security Bill," https://www.ssa.gov/history/fdrbill.html.

[46]   Rep. Santiago Iglesias, "Social Security and Puerto Rico," remarks in the House, *Congressional Record*, vol. 79, part 6 (May 3, 1935), p. 6902. Rep. Iglesias submitted Rep. Doughton's letter into the record.

[47]   Grants to States for Maternal and Child Welfare (Title V of the Social Security Act) and Public Health Work (Title VI of the Social Security Act).

[48]   Rep. John W. McCormack, "Amendment of the Social Security Act," remarks in the House, *Congressional Record*, vol. 84, part 7 (June 10, 1939), p. 6964.

Virgin Islands.[49] Several Administration officials testified in support but Senators who attended the hearing expressed skepticism at providing Puerto Rico and the Virgin Islands with funds in light of the territories' treatment under the federal tax code.

In 1949, the House approved a bill (H.R. 6000) that would become the Social Security Act Amendments of 1950 (P.L. 81-734). Among its many provisions, the House-passed version of H.R. 6000 established Aid to the Permanently and Totally Disabled (APTD; Title XIV) as well as extended Social Security (Title II) and the public assistance titles to Puerto Rico and the Virgin Islands. The report accompanying the House bill stated,

> Your committee believes that it would be reasonable to participate in assistance costs in Puerto Rico and the Virgin Islands, but recommends doing so on a basis different from that recommended for the States and Territories. The economy of the islands is at a lower level than that on the mainland. Furthermore, in the case of Puerto Rico, your committee took into consideration the fact that Puerto Rico retains the Federal excise taxes that it collects, instead of turning them in to the Federal Treasury and that the Federal income taxes are not applicable there.[50]

In late 1949, a special subcommittee of the House Committee on Ways and Means traveled to Puerto Rico as part of an investigation into the extension of the remaining titles of the Social Security Act to Puerto Rico and the Virgin Islands. In February 1950, the subcommittee recommended, among other things, slightly more generous benefits for adult assistance in Puerto Rico and the Virgin Islands than the levels passed in the House bill.[51]

The Senate-passed version of H.R. 6000 extended Social Security to Puerto Rico and the Virgin Islands but deleted the provisions extending the remaining public assistance titles. Amendments to apply

---

[49]   U.S. Congress, Senate Committee on Finance, *Extending Certain Titles of the Social Security Act to the Virgin Islands and Puerto Rico*, hearing on S.1328, 78th Cong., 2nd sess., February 15, 1944 (Washington: GPO, 1944), http://www.finance.senate.gov/imo/media/doc/78HrgSSPR.pdf.

[50]   U.S. Congress, House Committee on Ways and Means, *Social Security Act Amendments of 1949*, report to accompany H.R. 6000, 81st Cong., 1st sess., August 22, 1949, H.Rept. 81-1300, p. 55.

[51]   U.S. Congress, House Committee on Ways and Means, Subcommittee on Extension of Social Security to Puerto Rico and the Virgin Islands, *Extension of Social Security to Puerto Rico and the Virgin Islands*, 81st Cong., 2nd sess., February 6, 1950 (Washington: GPO, 1950), pp. 15-16.

the public assistance titles to Puerto Rico and the Virgin Islands failed.[52] The rationale for this was expressed by the Senate Committee on Finance Chairman:

> This matter was given full and due consideration by the committee. The truth is that all the taxes paid in the Virgin Islands are returned to the islands with a greatly increased sum. The truth also is, as the distinguished Senator from Maryland has pointed out, that Puerto Rico retains all of its internal taxes and retains all the income taxes. This is the amendment to increase the assistance to States. Puerto Rico and the Virgin Islands are brought under the old-age and survivors insurance title of this act, and with very greatly improved eligibility requirements in the pending bill; and, in view of a special provision which we inserted largely to take care of the situation in Puerto Rico, the people of those islands will receive great benefit under the bill. But since they keep all their taxes and even more than their taxes, the view of the committee was against bringing them in under the State assistance program or the grants.[53]

The Senate-House conference followed the House version of H.R. 6000 to extend OAA, Aid to Dependent Children, AB, and APTD to Puerto Rico and the Virgin Islands but established a fixed limit on the amount of payments, which became the Section 1108 caps. During debate on the conference report, Senator George explained,

> The conference agreement extends the State-Federal public assistance programs to Puerto Rico and the Virgin Islands. The Federal share is limited, however, to one-half the expenditures made to recipients of assistance. Moreover, the total Federal costs may not exceed $4,250,000 a year for Puerto Rico and $160,000 for the Virgin Islands. The Senate-passed bill made no provision for extending the public-assistance programs to those insular possessions while the House bill authorized such extension without an over-all dollar limit on annual Federal participation in costs. I may say, in passing, that the conference committee was advised that the limit of $4,250,000 a year for Puerto Rico and $160,000 for the Virgin Islands on the formula of matching, approved in the conference report, would be adequate.[54]

Following the 1950 amendments, Puerto Rico submitted state plans for OAA, AB, and APTD and became eligible for federal matching.[55] The Public Welfare Amendments of 1962 (P.L. 87-543) allowed

---

[52]  Sen. Herbert H. Lehman, "Social Security Act Amendments of 1950," remarks in the Senate, *Congressional Record*, vol. 96, part 7 (June 19, 1950), p. 8791.

[53]  Sen. Walter F. George, "Social Security Act Amendments of 1950," remarks in the Senate, *Congressional Record*, vol. 96, part 7 (June 20, 1950), p. 8891.

[54]  Sen. Walter F. George, "Social Security Act Amendment of 1950—Conference Report," Senate debate, *Congressional Record*, vol. 96, part 9 (August 17, 1950), p. 12713.

[55]  Puerto Rico's OAA and AB plans became effective on October 1, 1950, and its APTD plan became effective on January 1, 1951. *See* HHS, ACF, Office of Family Assistance, *Characteristics of State*

states to consolidate their adult assistance programs into the single program of Aid to the Aged, Blind, or Disabled (AABD) under the newly created Title XVI of the Social Security Act. In 1963, Puerto Rico elected to switch from operating the separate programs of OAA, AB, and APTD to operating the single program of AABD.[56]

**House-Passed Bills and Resolutions to Extend SSI to Puerto Rico and the Other Territories[57]**

There have been at least three bills passed by the House that would have extended SSI to Puerto Rico, Guam, and the Virgin Islands, albeit at reduced rates, and one resolution passed by the House that would have given the President discretionary authority to extend SSI. (Table 6). The first was the House-passed version of the Social Security Amendments of 1972 (H.R. 1; P.L. 92-603), which established the SSI program.[58] The House bill would have established a new federal program called Assistance for the Aged, Blind, and Disabled. This program would have been essentially the same as the SSI program that was enacted. However, the bill would have amended Section 1108 to provide that the amount of assistance benefits be reduced by the ratio of per capita income of the applicable territory to the per capita income of the State with the lowest per capita income.[59] Maximum benefit levels could not exceed those specified for the States. The Section 1108 funding caps would not have applied.

The Senate-passed version of the 1972 amendments did not extend SSI to the territories. During debate on the bill, Senator Quentin Burdick discussed the issue of SSI in the territories with Senator Russell Long, who at the time was the chair of the Senate Committee on Finance:

> Mr. BURDICK. Mr. President, I would like to ask the manager a question about the bill. Overlooked in the bill is consideration for the citizens of the United States

---

*Plans: Aid to Families with Dependent Children, 1990-91 Edition,* https://hdl.handle.net/2027/mdp.35112202592384

[56] Puerto Rico's AABD plan became effective on October 1, 1963. *See id.*

[57] For more information, *see* U.S. Department of Commerce, *Economic Study of Puerto Rico: Volume I,* December 1979, pp. 177-179, https://hdl.handle.net/2027/mdp.39015011062240.

[58] U.S. Congress, House Committee on Ways and Means, *Social Security Amendments of 1971,* report on H.R. 1, 92nd Cong., 1st sess., May 26, 1971, H.Rept. 92-231 (Washington: GPO, 1971), pp. 35 and 149 (hereinafter "House Report 92-231").

[59] House Report 92-231, p. 364.

residing in Guam, Puerto Rico, and the Virgin Islands. I hastily drew up an amendment I had intended to offer which I discussed with the Senator, and I believe the Senator gave me assurance that early next year the matter would be considered, and by early I mean as early as possible, after we have some data, facts, and figures that we need to correct this matter. Do I have that understanding?

Mr. LONG. Yes. I told the Senator, speaking as the manager of the bill, that if we could find what would appear to be an appropriate answer to provide equity and justice in those territories, I would be willing to accept such an amendment and take it to conference. Unfortunately, neither he nor those of us on the committee could come up with an adequate answer. I assure the Senator we on the committee will be glad to look into it and give our cooperation early in the next session.[60]

Immediately thereafter, Senator Jacob Javits and Senator Long discussed the Section 1108 caps:

Mr. JAVITS. Mr. President, Senator BUCKLEY and I were unfortunately late with respect to alleged serious deprivation resulting from certain ceilings under the social security laws on money for Guam, Puerto Rico, and the Virgin Islands for welfare programs. We decided it was just too hasty and too complicated to move into now. May I have the assurance of the chairman that that will be looked into?

Mr. LONG. Mr. President, the Senator is familiar with the problem here. There is a difference in the dollar level of earnings, and there are tax considerations, but I would be happy to say that we will seek to look into it next year.[61]

During a 1990 hearing before the House Committee on Interior and Insular Affairs, Subcommittee on Insular and International Affairs, CRS analyst Carolyn Merck, who was on staff of the Senate Committee on Finance when the 1972 amendments were passed, testified that the decision to exclude the territories from SSI was based on "considerable concern about raising benefit levels substantially in Puerto Rico."[62]

Congress held a number of hearings on SSI during the 1970s to assess the program. At a hearing in June 1975, the Resident Commissioner of Puerto Rico testified for the extension of SSI to the territory.[63]

---

[60] Sen. Quentin N. Burdick and Sen. Russell B. Long, "Social Security Amendments of 1972," Senate debate, *Congressional Record*, vol. 118, part 26 (October 5, 1972), p. 33991.

[61] Sen. Jacob K. Javits and Sen. Russell B. Long, "Social Security Amendments of 1972," Senate debate, *Congressional Record*, vol. 118, part 26 (October 5, 1972), p. 33991.

[62] Testimony of Carolyn Merck, Specialist in Social Legislation, Congressional Research Service, in U.S. Congress, House Committee on Interior and Insular Affairs, Subcommittee on Insular and International Affairs, *Briefing on Puerto Rico Status by the General Accounting Office [GAO] and the Congressional Research Service [CRS]*, oversight hearing, 101st Cong., 2nd sess., January 30, 1990, H.Hrg. 101-79 (Washington: GPO, 1991), p. 34.

[63] U.S. Congress, House Committee on Ways and Means, Subcommittee on Public Assistance, *Supplemental Security Income Program*, vol. 2, 94th Cong., 1st sess., June 4, 5, 6, 7, 9, 10, 11, 12, and 13, 1975 (Washington: GPO, 1975), p. 484.

The next month, the House approved the Northern Mariana Islands' territorial covenant that provided the President with discretionary authority to extend to Puerto Rico, the Virgin Islands, Guam, and American Samoa all federal programs providing grant, loan, or other assistance to the states, unless such extension were disapproved by resolution of either House of Congress. Under this authority, the President could extend SSI to Puerto Rico. In support of the provision, Representative Phillip Burton stated,

> It is hoped that this discretionary authority will be generously exercised to the end that the offshore areas—the Commonwealth of Puerto Rico, Guam, the Virgin Islands, American Samoa, and the other districts of the Trust Territory of the Pacific Islands—will be included in the various Federal programs, for example, SSI, from which they have been left out. The section contemplates that the executive may decide to include all—or just some—of the offshore areas in the various programs. One, some, all, or none of the areas may be included in each specific program.[64]

The Senate Finance Committee dropped this provision from H.J.Res 549. In justifying the elimination of the provision, Chairman Russell Long stated,

> In establishing the Supplemental Security Income—SSI—program for needy aged, blind, and disabled persons in 1972, Congress intentionally and specifically limited its applicability to the 50 States and the District of Columbia. This program provides a federally guaranteed minimum income to the aged, blind, and disabled; in view of the different economic and other circumstance in the territories and possessions, the Congress felt it would be inadvisable to provide the Federal SSI income guarantee level in the territories and possessions. For these jurisdictions, Congress continued the then existing program of aid and services for the aged, blind, and disabled. Under these programs, assistance is provided according to locally developed plans which can be more appropriated tailored to the circumstances prevailing in each area....
>
> The covenant establishing a new U.S. Commonwealth of the Northern Mariana Islands, which was recently approved by the Senate, includes a provision making these Social Security Act programs applicable in that jurisdiction. A subsequent resolution providing funding for the Northern Mariana Islands was passed by the House of Representatives with amendments extending these Social Security Act programs also to Guam and permitting the President, subject to congressional veto, to extend them to other territories. When this matter was discussed by the Committee on Finance at its March 9, 1976, executive session, the committee

---

[64]   Rep. Phillip Burton, "Approving the 'Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America,'" House debate, *Congressional Record*, vol. 121, part 18 (July 21, 1975), p. 23669.

urged that these provisions be stricken from that bill. I am pleased to note that the Senate has done just that.[65]

The House ultimately agreed to the Senate amendment.

In August 1976, the House passed the Supplemental Security Income Amendments of 1976 (H.R. 8911) which would have extended SSI to Puerto Rico, Guam, and the Virgin Islands on the same basis as the 1972 amendments. The House report accompanying the legislation noted:

> Your Committee is convinced that payments made to aged, blind, and disabled persons in these jurisdictions are small and inadequate in comparison to their needs. The provision in your Committee's bill is the same as that adopted by the House in 1971. It would provide that each jurisdiction would participate in the SSI program on the basis of the relationship of its per capita income to the per capita income of the lowest of the fifty States. Your Committee understands that this will produce Federal benefits about sixty percent as high as that for the States in Puerto Rico, and somewhat higher amounts in Guam and the Virgin Islands. The payments would in no event exceed those made in the fifty States.[66]

Although several of the SSI provisions in H.R. 8911 were incorporated by the Senate into the Unemployment Compensation Amendments of 1976 (P.L. 94-566), the provision to extend SSI to the territories was not.[67]

In a March 15, 1977 report to the House Committee on the Budget, the House Committee on Ways and Means recommended the extension of SSI to Puerto Rico, Guam, and the Virgin Islands on the same basis as the other bills.[68] In May of that year, the House Ways and Means Committee held a hearing on

---

[65] Sen. Russell B. Long, "Statements of Introduced Bills and Joint Resolutions," remarks in the Senate, *Congressional Record*, vol**.** 122, part 5 (March 11, 1976), pp. 6244-6245. As part of his remarks, Senator Long introduced a bill (S. 3125) to exclude the Northern Mariana Islands from SSI and instead extend the adult assistance programs to the islands.

[66] U.S. Congress, House Committee on Ways and Means, *Public Assistance Amendments of 1977*, report to accompany H.R. 8911, 94th Cong., 2nd sess., May 27, 1976, H.Rept. 94-1201 (Washington: GPO, 1976), p. 7.

[67] "SSI Program Changes." *CQ Almanac*, 1976, 32nd ed., pp. 628-33 (Washington, DC: Congressional Quarterly, 1977), https://library.cqpress.com/cqalmanac/document.php?id=cqal76-1187559.

[68] U.S. Congress, House Committee on Ways and Means, *March 15 Report of the Committee on Ways and Means to the House Budget Committee on the Fiscal Year 1978 Budget*, committee print, 95th Cong., 1st sess., March 15, 1977, H.Prt. 95-13 (Washington: GPO, 1977), p. 23.

public assistance proposals, including the Committee's recommendation to extend SSI to the territories.[69] On June 7, the House Committee on Ways and Means reported the Public Assistance Amendments of 1977 (H.R. 7200), which would have extended SSI to Puerto Rico on the same basis as the 1972 amendments and H.R. 8911. The report accompanying the bill stated,

> The House has agreed on two separate occasions to extend SSI to Puerto Rico, Guam, and the Virgin Islands—once in the 92nd Congress when the House passed H.R.1, which established the SSI program, and more recently in the SSI bill (H.R. 8911) passed by the House last year. In both instances, the Senate refused to accept the provision. The Committee believes that it is necessary and appropriate to extend the SSI program to the needy aged, blind and disabled residing in Puerto Rico, Guam, and the Virgin Islands who, like their counterparts in the States, are most vulnerable to poverty because of their physical inability to work.[70]

The Senate Finance Committee held a hearing on H.R. 7200 in July at which the Governor of Puerto Rico testified that not only should SSI be extended but also that maximum benefit levels should be phased in to equal levels in the States.[71] Under this proposal, maximum benefit levels in Puerto Rico would have increased from 60% of the federal benefit rate in 1978 to 100% in 1982.

SSA estimated that the provision to extend SSI to the territories would have increased the number of aged, blind, or disabled residents of Puerto Rico receiving cash assistance from 35,384 to 185,000.[72] The Senate version of the bill would have instead increased the federal matching rate from 50% to 75%, which is the current standard, and increased the Section 1108 cap for Puerto

---

[69]   U.S. Congress, House Committee on Ways and Means, Subcommittee on Public Assistance and Unemployment Compensation, *Public Assistance Legislative Recommendations*, 95th Cong., 1st sess., May 2, 3, 4, and 5, 1977, H.Hrg. 95-14 (Washington: GPO, 1977).

[70]   U.S. Congress, House Committee on Ways and Means, *Public Assistance Amendments of 1977*, report to accompany H.R. 7200, 95th Cong., 1st sess., June 7, 1977, H.Rept. 95-394, p. 47.

[71]   Testimony of Carlos Romero-Barcelo, Governor of Puerto Rico, in U.S. Congress, Senate Committee on Finance, *Public Assistance Amendments of 1977*, 95th Cong., 1st sess., July 12, 18, 19, and 20, 1977, S.Hrg. 95-16 (Washington: GPO, 1977), pp. 192-194.

[72]   U.S. Congress, Senate Committee on Finance, *Public Assistance Amendments*, committee print, 95th Cong., 1st sess., July 11, 1977, S.Prt. 95-12 (Washington: GPO, 1977), p. 11, http://www.finance.senate.gov/imo/media/doc/sprt95-12.pdf.

Rico from $24 million to $72 million.[73] The Senate bill would have also extended AABD to the Northern Mariana Islands.[74] In the end, H.R. 7200 was postponed indefinitely.

| Table 6. House-Passed Bills and Resolutions to Extend SSI to Puerto Rico and the Other Territories | | | |
|---|---|---|---|
| **Bill or Resolution** | **Nature of the Extension Provisions** | **Action in the Senate** | **Final Action** |
| Social Security Amendments of 1972 (H.R.1; P.L. 92-603) | SSI federal benefit rate reduced by the ratio of the territory's per capita income to the state with the lowest per capita income | Deleted extension provisions | Conference agreement followed the Senate amendment; H.R.1 was enacted as P.L. 92-603 without the extension provisions |
| Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (H.J.Res 549; P.L. 94-241) | Granted the President discretionary authority to extend SSI and other programs to the territories, subject to congressional veto | Deleted discretionary authority provisions | House agreed to the Senate amendment; H.J.Res 549 was enacted as P.L. 94-241 without the discretionary authority provisions |
| Supplemental Security Income Amendments of 1976 (H.R. 8911) | SSI federal benefit rate reduced by the ratio of the territory's per capita income to the state with the lowest per capita income | Declined to act on H.R. 8911 | Some of the provisions in H.R. 8911 were included in P.L. 94-566; however, the extension provisions were not among them |
| Public Assistance Amendments of 1977 (H.R. 7200) | SSI federal benefit rate reduced by the ratio of the territory's per capita income to the state with the lowest per capita income | Deleted extension provisions; instead, increased the federal financial participation (FFP) rate and Section 1108 caps for the adult assistance programs in the territories | The bill was postponed indefinitely |

**Source**: CRS.

**Notes**: Bills and resolution available upon request

---

[73]   U.S. Congress, Senate Committee on Finance, *Public Assistance Amendments of 1977*, report to accompany H.R. 7200, 95th Cong., 1st sess., November 1, 1977, S.Rept. 95-573, p. 18, http://www.finance.senate.gov/imo/media/doc/srpt95-573.pdf.

[74]   *Id.*

**Table 7. Cash Assistance Programs for the Aged, Blind, and Disabled under the Social Security Act, by Number of Adult Recipients and Average Monthly Payment, 2011**

| Program and Area | Number of Recipients Aged 18 or older | Average Monthly Payment |
|---|---|---|
| **Old-Age Assistance (OAA), Aid to the Blind (AB), and Aid to the Permanently and Totally Disabled (APTD)** | | |
| Guam | 650 | $150.00 |
| Virgin Islands | 1,018 | $176.07 |
| **Aid to the Aged, Blind, or Disabled (AABD)** | | |
| Puerto Rico | 36,832 | $73.85 |
| **Supplemental Security Income (SSI)** | | |
| Northern Mariana Islands | 668 | $525.69 |
| 50 States and the District of Columbia | 6,834,983 | $483.02 |

**Source:** CRS, based on data from ACF and SSA, *SSI Annual Statistical Report, 2011*, September 2012, Table 10, https://www.ssa.gov/policy/docs/statcomps/ssi_asr/2011/index.html.
**Notes**: Data for Puerto Rico are for September 2011. Data for Guam are for FY2011. Data for the Virgin Islands, the Northern Mariana Islands, the 50 States, and the District of Columbia re for December 2011.

## CONCLUSION

Of all the disparities that Americans living in Puerto Rico face, none is as shocking to the conscience as the disparity in the assistance available to the most vulnerable citizens, people who under no circumstance can support themselves. An American living under the poverty line in the continental United States is no more needy, vulnerable, or deserving of assistance than an American living under the poverty line in the territory.

SSI is a means-tested entitlement program which, unlike Social Security, does not require a beneficiary to make payments into program to be entitled to the benefits. An American in a State receiving SSI is as likely to pay federal taxes as an American living in Puerto Rico. There is no justifiable reason for this statutory discrimination.

Respectfully submitted.

Dated: November 7, 2018

s/ *Veronica Ferraiuoli Hornedo*
Veronica Ferraiuoli Hornedo
USDC-PR 213814
Legal Counsel to
HON. JENNIFFER GONZALEZ-COLON
Member of Congress

OFFICE OF THE RESIDENT COMMISSIONER
🌐1529 Longworth House Office Building
Washington, DC 20515
🖃 P.O. Box 9023958
San Juan, PR 00902-3958
🕾 202-225-2615  787.723-6333
🖥 Veronica.Ferraiuoli@mail.house.gov

---

## CERTIFICATE OF SERVICE

---

It is hereby certified that, on November 7, 2018, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to all parties who have

made an electronic appearance.

s/ *Veronica Ferraiuoli Hornedo*
Veronica Ferraiuoli Hornedo