IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**  CASE NO. 17-2133 (GAG)

**JOSE LUIS VAELLO MADERO,**

**Defendant.**

## OPINION AND ORDER

Article IV of the Constitution confers upon Congress the power to enact all needful rules and regulations for governing territories of the United States. This clause, however, is not *carte blanche* for Congress to switch on and off at its convenience the fundamental constitutional rights to Due Process and Equal Protection enjoyed by a birthright United States citizen who relocates from a State to Puerto Rico. Congress, likewise, cannot demean and brand said United States citizen while in Puerto Rico with a stigma of inferior citizenship to that of his brethren nationwide. To hold otherwise would run afoul of the sacrosanct principle embodied in the Declaration of Independence that "All Men are Created Equal".

Pending before the Court are defendant Jose Luis Vaello-Madero and plaintiff United States' motions for Summary Judgment. (Docket Nos. 57, 59). Vaello Madero contends he is not required to return the payments he received in Social Security Income ("SSI") disability benefits upon changing his domicile to Puerto Rico since excluding a United States citizen residing in the territory from receiving the same runs afoul of the equal protection guarantees of the Due Process Clause. In turn, the United States posits that limiting SSI eligibility to residents of the fifty states and the District of Columbia is constitutionally permissible. Based on the foregoing analysis,

**Case No. 17-2133 (GAG)**

Vaello-Madero's Motion for Summary Judgment is **GRANTED** and the United States' Cross-Motion for Summary Judgment is **DENIED**.

## I. Relevant Factual and Procedural Background

The facts of this case are undisputed and have been jointly proposed by both parties. (Docket No. 51 at pages 2-4).

Vaello-Madero resided in New York between 1985-2013. While there, he received SSI disability benefits, which were deposited into his New York bank account. In July 2013, he moved to Puerto Rico, and continued to receive SSI disability payments in his New York bank account until August 2016. Vaello-Madero was unaware that his relocation would affect his SSI disability entitlement.

Vaello-Madero learned he was ineligible for SSI payments in June 2016. Via two notices that summer, the Social Security Administration ("SSA") stopped its SSI payments, and retroactively reduced said payments to $0 for August 2013 through August 2016. The notices informed Vaello-Madero that the SSA could contact him "about any payments we previously made," but did not inform him that he would have to return the amount of benefits collected while in Puerto Rico.

On August 25, 2017, the United States commenced the current civil action against Vaello-Madero to collect $28,081.00 in overpaid SSI benefits received following his relocation from United States mainland to territory. Surprisingly, the United States moved for voluntary dismissal of its claims against Vaello-Madero claiming lack of jurisdiction under 42 U.S.C. § 408(a)(4), on the ground that the SSA's administrative requirements had not been met. (Docket No. 23). Vaello-Madero filed an opposition to the voluntary dismissal arguing that the dismissal "raises the prospect that the United States might be trying to abandon its chosen forum in response to what it might perceive as a serious setback." (Docket No. 25 at 12). The Court agreed with Vaello-Madero,

**Case No. 17-2133 (GAG)**

finding that since the United States brought suit, the Court had "broad jurisdictional power" to entertain the same. (Docket No. 36 at 3). <u>United States v. Vaello-Madero</u>, 313 F. Supp. 3d 370 (D.P.R. 2018).

In support of his motion for summary judgment, Vaello-Madero argues that the Social Security Act's exclusion of Puerto Rico from the SSI benefits program under section 1382c(e) thereof violates the equal protection guarantees of the Due Process Clause. The United States argues, in turn, that Congress' determinations as to eligibility requirements for government benefits hold a strong presumption of constitutionality. Furthermore, the United States claims that Congress' authority under the Territorial Clause enables it to pass economic and social welfare legislation for the territories where there is a rational basis for such actions.

Oral arguments were held on December 20, 2018 at the Luis A. Ferré Courthouse in Ponce, Puerto Rico. (Docket No. 88). Besides the parties, the Commonwealth, as well as the sole representative in Congress from Puerto Rico, Jenniffer González, as *amici curiae*, participated.

Because the salient facts are not in controversy, and the issue at bar rather is entirely a legal-constitutional one, the Court shall directly proceed to address its merits.

**II.     Analysis**

Today's ruling will not delve into the complex constitutional issues of Puerto Rico as a territory of the United States for the past 120 years. Instead, the Court's analysis will focus exclusively on Vaello-Madero's defense regarding the constitutionality of the restitution sought by the government.

A.  <u>Social Security Act and Supplemental Disability Benefits</u>

The SSI program was created to aid the Nation's aged, blind, and disabled persons who qualify due to proven economic need. 42 U.S.C. § 1382. Unlike Social Security and Medicare,

individuals do not contribute toward the SSI program.[1] In order to be eligible for the SSI program an individual must reside in the "United States," id. at § 1382(f), which, in turn, is defined as the 50 States and the District of Columbia. Id. at § 1382c(e).[2] Since Puerto Rico is not included in the aforesaid definition, a United States citizen such as Vaello-Madero is automatically excluded from the SSI program. The United States justifies this exclusion under Congress' plenary powers under the Territorial Clause. Further, it asserts that the denial of SSI disability payments to United States citizens in Puerto Rico does not violate the Fifth Amendment's equal protection guarantee under a deferential rational basis review standard.

### B.  The Territorial Clause

The Territorial Clause is not a blank check for the federal government to dictate when and where the Constitution applies to its citizens. "The Constitution grants Congress and the President the power to acquire, dispose of, and govern territory, not the power to decide when and where its terms apply." Boumediene v. Bush, 553 U.S. 723, 765 (2008). "Even when the United States acts outside its borders, its powers are not 'absolute and unlimited' but are subject 'to such restrictions as are expressed in the Constitution.'" Boumediene, 533 U.S. at 765 (citing Murphy v. Ramsey, 114, U.S. 15, 44 (1885)).

Congress indeed possesses a wide latitude of powers to effectively govern its territories. However, "[a]bstaining from questions involving formal sovereignty and territorial governance is one thing. To hold the political branches have the power to switch the Constitution on or off at will is quite another." Boumediene, 533 at 765. This "would permit a striking anomaly in our tripartite system of government, leading to a regime in which Congress and the President, not [the

---

[1] United States citizens in Puerto Rico contribute equally to Social Security and Medicare as do United States citizens in the States and District of Columbia.

[2] Notwithstanding, the United States acknowledges that Congress made SSI program benefits available to residents of the Commonwealth of the Northern Mariana Islands by virtue of a joint resolution in 1976. See Pub. L. No. 94-241, § 502(a)(1), 90 Stat. 263, 268 (1976) (codified at 48 U.S.C. § 1801 note, and implemented by 20 C.F.R. § 416.120(c)(10)).

judicial branch], say what the law is." Boumediene, 533 at 765 (citing Marbury v. Madison 5 U.S. 137, 177 (1803)). The authority to treat the territory of Puerto Rico itself unlike the States does not stretch as far as to permit the abrogation of fundamental constitutional protections to United States citizens as Congress sees fit.

The powers granted under the Constitution are not infinite. "The power the Constitution grants it also restrains. And though Congress has great authority to design laws to fit its own conception of sound national policy, it cannot deny the liberty protected by the Due Process Clause of the Fifth Amendment." United States v. Windsor, 570 U.S. 744, 774 (2013). Thus, the broad power granted under the Territorial Clause does not allow Congress to eradicate the sacrosanct fundamental constitutional protections afforded to United States citizens residing in the States and Puerto Rico.

### C. Equal Protection Guarantee of the Fifth Amendment

The Fifth Amendment's Due Process Clause assures that the same equal protection principles of the Fourteenth Amendment generally constrain the federal government, even though the Equal Protection Clause by its terms does not. Bolling v. Sharpe, 347 U.S. 497, 500 (1954). The United States argues that Congress may place restrictions on the eligibility "of persons residing in United States territories to receive payments under the [SSI] program administered by the [SSA], and that such restrictions are consistent with equal protection principles".

In order for the Court to be persuaded by the United States' argument, it would have to sanction the proposition that Congress can disparately classify United States citizens residing in Puerto Rico, running counter to the very essence and fundamental guarantees of the Constitution itself. "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." Windsor, 570 U.S. at 774.

"The Constitution's guarantee of equality 'must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot' justify disparate treatment of that group." Windsor, 570 U.S. at 770 (citing Department of Agriculture v. Moreno, 413 U.S. 528, 534–535 (1973)). An allegation of disparate treatment of United States citizens residing in Puerto Rico requires that the court determine "whether [the] law is motived by an improper animus or purpose." Id. at 770. The Government's justification for excluding United States citizens residing in Puerto Rico from SSI benefits rests on Congress' authority to enact social and economic legislation. When a statute is reviewed under a rational basis lens, the challenger must prove that no plausible set of facts exists that could forge a rational relationship between the challenged rules and the government's legitimate goals. Romer v. Evans, 517 U.S. 620, 631 (1993).

In light of Windsor, the discriminatory statute at bar fails to pass rational basis constitutional muster. United States citizens residing in Puerto Rico are deprived of receiving SSI benefits based solely on the fact that they live in a United States territory. Classifying a group of the Nation's poor and medically neediest United States citizens as "second tier" simply because they reside in Puerto Rico is by no means rational. An overwhelming percentage of the United States citizens residing in Puerto Rico are of Hispanic origin and are regarded as such despite their birthright United States citizenship.[3] Persons born in Puerto Rico have been United States citizens since 1917. This citizenship, was originally a statutory one.[4] However, in 1940, Congress recognized that those born in January 1941, and thereafter, enjoyed birthright citizenship.[5]

United States citizens residing in Puerto Rico are the very essence of a politically powerless group, with no Presidential nor Congressional vote, and with only a non-voting Resident

---

[3] Likewise, United States citizens in the other two territories that are excluded from the SSI program, Guam and the United States Virgin Islands, are mainly of Chamorro and afro-caribbean descent, respectively.
[4] Jones Act (Puerto Rico), Ch. 154, 39 Stat. 951 (1917).
[5] 8 U.S.C. § 1402.

Commissioner representing their interests in Congress. If a statute discriminates on the basis of a suspect classification, then it is subjected to a heightened scrutiny standard and must be invalidated unless it is "narrowly tailored to achieve a compelling government interest." Parents Involved in Community Schools v. Seattle School Dist. No. 1, 551 U.S. 701, 720 (2007). A *de facto* classification based on Hispanic origin is constitutionally impermissible. See Rice v. Cayetano, 528 U.S. 495, 523 (2000) (holding that Congress cannot authorize classifications based on racial ancestry, and that "[r]ace cannot qualify some and disqualify others from full participation in our democracy").[6]

The Court need not explain why the SSI statutory exclusion also fails under a heightened scrutiny standard. It is obvious that the same is not narrowly tailored to achieve a "compelling government interest." Even so, the Court need not delve into a strict versus rational basis scrutiny analysis, as in accordance with Windsor, the denial of SSI disability benefits to United States citizens in Puerto Rico is unconstitutional as "a deprivation of the liberty of the person protected by the Fifth Amendment of the Constitution." Parents Involved in Community Schools 551 U.S. at 774. It is a violation of "basic due process" principles, as it inflicts an "injury and indignity" of a kind that denies "an essential part of the liberty protected by the Fifth Amendment." Id. at 769 and 768.

As in Windsor, 570 U.S. at 772, "[t]he principal purpose [of the statute] is to impose inequality, not for other reasons like governmental efficiency." The United States justifies the exclusion of Puerto Rico and argues that: (1) the cost of including Puerto Rico in the SSI program would be too high and that (2) Puerto Rico does not pay federal income tax which funds the SSI program. (Docket No. 59 at 1). Aside from the fact that the cost is minimal compared to the

---

[6] While Rice v. Cayetano was decided by the Supreme Court on Fifteenth Amendment grounds, racial classifications are equally impermissible in the Equal Protection content, i.e., Brown v. Board of Education, 347 U.S. 483 (1954).

government's budget for such program, this is not a valid justification for creating classifications of United States citizens and justifying the same under the lax scrutiny of social and economic legislation. While line drawing is necessary for Congress to pass social and economic legislation, it is never a valid reason for disparate treatment of United States citizen's fundamental rights.[7]

The reasons for excluding SSI benefits to United States citizens in Puerto Rico are belied by the fact that United States citizens in the Commonwealth of the Northern Mariana Islands receive SSI disability benefits.[8] Additionally, aliens in the States, District of Columbia, and the Commonwealth of the Northern Mariana Islands may qualify for SSI benefits. In fact, in 2017, 6% of all SSI beneficiaries were noncitizens. SSI Annual Statistical Report, 2017, https://www.ssa.gov/policy/docs/statcomps/ssi_asr/2017/sect05.pdf. In 1995, this percentage was as high as 12.1% which represented a total of 785,410 beneficiaries." Id. This number is exponentially higher than that of United States citizens in Puerto Rico who would be eligible for SSI benefits.[9]

It is the Government's role to protect the fundamental rights of all United States citizens. Fundamental rights are the same in the States as in the Territories, without distinction. Equal Protection and Due Process are fundamental rights afforded to every United States citizen, including those who under the United States flag make Puerto Rico their home. Examining Bd. of Engineers, Architects, & Surveyors v. Flores de Otero, 426 U.S. 572 (1976). As such, federal legislation that creates a citizenship apartheid based on historical and social ethnicity within United

---

[7] The United States relies on the pre Boumediene and Windsor cases of Califano v. Torres, 435 U.S. 1 (1978) and Harris v. Rosario, 446 U.S. 651 (1980). This Court, however, cannot simply bind itself to the legal *status quo* of 1980, and ignore important subsequent developments in the constitutional landscape. If so, cases like Plessy, Baker v. Nelson and Korematsu would still be good law.

[8] Although the inclusion of United States citizens residing in the Commonwealth of the Northern Mariana Islands came subsequent to the enactment of the SSI program, this fact nonetheless evidences that Congress, in fact, has recognized the importance of extending the program to United States citizens in the territories.

[9] The United States in its supplemental brief (Docket No. 96) notes that unlike United States citizens residing in Puerto Rico, resident aliens are subject to federal income tax. This misses the point. A significant percentage of United States citizens in Puerto Rico -contrary to popular belief- must pay federal taxes. However, when it comes to SSI, neither group in reality contributes to the federal treasury due to the fact that its beneficiaries are poor and needy.

**Case No. 17-2133 (GAG)**

States soil goes against this very concept. It is in the Court's responsibility to protect these rights if the other branches do not. Allowing a United States citizen in Puerto Rico that is poor and disabled to be denied SSI disability payments creates an impermissible second rate citizenship akin to that premised on race and amounts to Congress switching off the Constitution. All United States citizens must trust that their fundamental constitutional rights will be safeguarded everywhere within the Nation, be in a State or Territory.[10]

### III.   Conclusion

For the reasons stated above, the Court **GRANTS** Vaello-Madero's Motion for Summary Judgment (Docket No. 57) and **DENIES** the government's Cross-Motion for Summary Judgment (Docket No. 59). Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico this 4th day of February, 2019.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

[10]   To hold otherwise would permit constitutionally absurd and anomalous results in Puerto Rico. For example, a statute analogous to the Defense of Marriage Act, held to be unconstitutional in Windsor, could still apply in Puerto Rico if premised on territorial, socio-economic grounds. Thus, same sex spouses who move to Puerto Rico, would not be entitled here to dependent Social Security, veterans, or other federal benefits and entitlements.